CITY OF DETROIT v. MICHIGAN PUBLIC SERVICE COMMIS-
SION.

1. PUBLIC SERVICE COMMISSIONS—RATE-FIXING.
   It is the duty of the public service commission, under its statu-
   tory power, to fix a just and reasonable rate of charge for
   service by public utilities not municipally-owned (2 Comp.
   Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

2. SAME—RATE-FIXING.
   The determination of what is a just and reasonable rate of
   charge for electricity by a corporate public utility can be
   accomplished only by balancing the interest of public utility
   investors and the consuming public.

3. SAME—EARNINGS OF UTILITY—EXCESS PROFITS.
   That so-called "excess profits" of a public utility corporation,
   supplying electricity as a public service, do exist may or may
   not demonstrate that the earnings of the corporation are ex-
   cessive.

4. SAME—DISCLAIMER OF POWER TO CONSIDER EXCESS PROFITS—
   FAIR HEARING.
   Disclaimer by public service commission of power to consider
   fact that public utility corporation supplying electricity paid
   a so-called "excess profits" tax, when making a determina-
   tion as to what is a just and reasonable rate to be charged
   for the electricity, results in a failure properly to balance
   investor and public interest; hence the commission failed to
   hold a fair and adequate hearing (2 Comp. Laws 1929,
   § 11099; Act No. 3, Pub. Acts 1939).

5. SAME—EXCESS PROFITS—DISCRETION OF COMMISSION.
   The exclusion of an unnecessary element, such as avoidable taxes
   on excess profits, in making a determination as to what is a
   just and reasonable rate of charge for electricity by a cor-
   porate public utility is a matter within the discretion of the
   public service commission (2 Comp. Laws 1929, § 11099; Act
   No. 3, Pub. Acts 1939).

6. SAME—RATES—EXCESS PROFITS.

Excess profits of a corporation are a question of fact for determination by the public service commission in making a determination of rates to be charged by a corporate public utility (2 Comp. Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

7. SAME—RATES—DISCRETION OF COMMISSION.

In imposing the duty upon the public service commission to fix reasonable rates for service by public utilities it could not be the intent of the legislature that the commission lack any necessary power to fix reasonable rates and the commission should not only not be permitted to declare itself impotent but should exercise such discretionary power as it clearly possesses (2 Comp. Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

8. SAME—RATES—EXCESS PROFITS—EXTRAORDINARY SITUATIONS—TIME.

In making a determination of rates chargeable by a public utility corporation, the public service commission should not require the corporation to reduce its rates for period during which excess profits taxes have been paid or have accrued but it should take into consideration the usual elements of rate determination as well as obsolescence and depreciation of capital assets due to any extraordinary situations arising out of war conditions such as the effect of unusual and heavy war time loads, time lag in a return to normal conditions, and the period elapsing before a redetermination can again be made of a reasonable rate (2 Comp. Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

9. SAME—RATES—EXTRAORDINARY PROFITS—FAIR RETURN ON INVESTMENT.

In making a determination of rates chargeable by a public utility corporation the public service commission should not require the public to pay rates that will yield an extraordinary profit to the utility and, on the other hand, the stockholders of the utility are at all times entitled to a fair return on their investment (2 Comp. Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

10. COSTS—ELECTRIC RATES—APPEAL FROM PUBLIC SERVICE COMMISSION.

No costs are allowed on appeal in the nature of certiorari from order of public service commission dismissing a city's petition for reduction of rates chargeable for electricity by corporate public utility (2 Comp. Laws 1929, § 11099; Act No. 3, Pub. Acts 1939).

WIEST, SHARPE, and BOYLES, JJ., dissenting.

Appeal from Michigan Public Service Commission. Submitted January 12, 1944. (Docket No. 68, Calendar No. 42,534.) Decided May 17, 1944. Rehearing denied June 30, 1944.

Petition by the City of Detroit for a reduction of rates charged by Detroit Edison Company. City Ice & Fuel Company, Detroit City Ice & Fuel Company, Borin Brothers, Incorporated, Beaubien Ice & Coal Company, Price Administrator, the cities of Hamtramck, Dearborn, and Highland Park, and Michigan Manufacturers Association intervene. Petition dismissed. Plaintiff reviews by appeal in nature of certiorari. Order vacated and cause remanded.

*Paul E. Krause,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for petitioner.

*Oscar C. Hull, Laurence M. Sprague, Paul W. McQuillen,* and *Plummer Snyder,* for Detroit Edison Company.

*Howell Van Auken* and *Lucking, Van Auken, Schumann & Greiner,* for intervener City Ice & Fuel Company.

*Richard H. Field, David F. Cavers, Harry R. Booth, Herbert Sharfman,* and *A. L. Stein,* for intervener Price Administrator.

*Thomas G. Long,* amicus curiae; *K. F. Clardy, Walter D. Kline, James D. Shaw,* and *Van B. Wake, Karl F. Oehler, Walter Brewer,* and *Edward J. Farrell,* amici curiae, on application for rehearing.

SHARPE, J. (*dissenting*). This is an appeal in the nature of certiorari from an order of the Michigan

public service commission dismissing a petition by the city of Detroit asking for a reduction in the electric rates of the Detroit Edison Company.

In October, 1942, the city of Detroit filed a petition with the Michigan public service commission asking that the commission issue an order directed to the Detroit Edison Company to show cause why the company should not file a new schedule of rates effective during November and December, 1942, which will effectuate a net income for the accounting year of 1942 of not more than $12,000,000 and file a reduced schedule of rates effective January 1, 1943, under which the company would reduce its existing rates about 25 per cent.

Soon after the above petition was filed, the cities of Dearborn, Highland Park and Hamtramck, the Michigan Manufacturers' Association, the City Ice & Fuel Company, and the office of price administration of the United States government were permitted to intervene.

The petition filed by the city of Detroit alleges that the Detroit Edison Company will fall into the excess profits tax bracket as defined by the 1942 income tax law to the extent of approximately $8,000,000 and will be required to pay 90 per cent. of this amount as excess profits taxes; that such excess income has been derived under the present rates and schedules of the Detroit Edison Company; and that such rates and schedules are unreasonable and excessive.

The office of price administration intervened "so that rate increases will be disapproved and rate reductions effected, consistently with the act of October 2, 1942, and other applicable Federal, State or municipal law, in order to keep down the cost of living and effectuate the stabilization program."

The other interveners stressed their special circumstances, but all sought a reduction in rates. The commission conducted a general rate hearing. There was extensive evidence as to the nature, cost and value of the assets of the Detroit Edison Company, its income and its expenses and the rate of return to which it is entitled. The Detroit Edison Company presented evidence that its proper rate base was more than $330,000,000. The city of Detroit recommended a rate base of $271,576,000. The commission did not decide upon the amount of the rate base, but for the purpose of its decision assumed an amount less than that claimed by the city of Detroit.

On July 17, 1943, the commission entered an order of which the following is pertinent to the issue involved in this cause:

"Under the laws of the State of Michigan, a regulated utility is entitled to earn a fair return upon the present value of the property devoted by it to public service. Money that has been lawfully spent in rendering service constitutes no part of such a return. The dollar paid out for taxes is no more available as income and return than a dollar spent for labor or any other legitimate expense.

"We have repeatedly stressed the fact that we are a statutory body and possess only the powers conferred upon us by statute. We know of no statute giving us the power to forbid a company the right to charge as an operating expense any tax lawfully incurred by it. Likewise we know of no statute giving us the power to forbid such a company the right to so charge any part of the tax so incurred to operating expenses.

"We therefore find that all taxes are a proper operating charge and they will be so considered in determining the income of the company in this case.

"Such being our opinion in determining whether or not the earnings of the Detroit Edison Company are excessive, we consider such earnings as are available to the company after the payment of income taxes."

The city of Detroit, city of Hamtramck and the price administrator appeal from this order. The city of Detroit contends that the Michigan public service commission, in determining a fair rate of return for a utility, should compute such return completely independent of, and prior to, the application of the excess profits tax rate; and that so-called "war taxes" as distinguished from normal income and other normal levies should not be chargeable as an operating cost.

The price administrator urges that the commission has the statutory power and duty to disallow improper operating expenses including war income and excess profits taxes in determining reasonable rates; that the increased income tax rates since 1939 and the excess profits tax are not operating expenses within the usual meaning of that term and should be disregarded in computing net revenue available for return; and that the allowance of war taxes as an operating expense would be inflationary.

The City Ice & Fuel Company urges that the commission should be instructed to fix rates after a just balancing of consumer as well as investor interests with any and all pragmatic adjustments necessary in view of abnormal war times and conditions.

The Detroit Edison Company urges that the law of Michigan does not empower the commission to forbid an electric company to charge as an operating expense any tax lawfully incurred; and that any tax including income taxes paid the Federal government is a proper element of the cost of operation.

It is to be noted that there is no question raised in this appeal as to the rate base or the reasonable rate of return and these issues are not before the court. The only question we have for decision may be stated as follows: Does the Michigan public service commission have discretionary power to exclude excess profits taxes from operating expenses in determining the rates?

In deciding this question it is necessary to examine the act creating the commission. The Michigan public service commission was created by Act No. 3, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 11017–1 et seq., Stat. Ann. 1943 Cum. Supp. § 22.13 [1] et seq.).

Section 4 of the act provides:

"All the rights, powers, and duties vested by law in said Michigan public utilities commission, and in the Michigan railroad commission and transferred to the Michigan public utilities commission, shall be deemed to be transferred to and vested in the Michigan public service commission hereby created, and shall hereafter be exercised and performed by said commission. * * * Said Michigan public service commission shall have and exercise all rights and privileges and the jurisdiction in all respects as has been conferred by law and exercised by the Michigan public utility commission under the laws of this State. * * * Any order or decree of the Michigan public service commission shall be subject to review in the manner now provided by law for reviewing orders and decrees of the Michigan railroad commission or the Michigan public utilities commission.

Section 6 of the act reads as follows:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except

any municipally-owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including electric light and power companies, whether private, corporate or cooperative.''

The powers of the present commission to regulate charges for electricity are granted by Act No. 106, § 7, Pub. Acts 1909, as last amended by Act No. 108, Pub. Acts 1923 (2 Comp. Laws 1929, § 11099 [Stat. Ann. § 22.157]), which provides:

''In determining the proper price, the commission shall consider and give due weight to all lawful elements properly to be considered to enable it to determine the just and reasonable price to be fixed for supplying electricity, including cost, reasonable return on the fair value of all property used in the service, depreciation, obsolescence, risks of business, value of service to the consumer, the connected load, the hours of the day when used and the quantity used each month.''

This being an appeal in the nature of certiorari, we consider questions of law only and will not review questions of fact or weigh the evidence except to determine whether there is an entire absence of evidence or proof on some material fact. The power or authority of the Michigan public service commission to exclude excess profits taxes in determining rates is a question of law.

In *Michigan Public Utilities Commission* v. *Michigan State Telephone Co.*, 228 Mich. 658 (P. U. R. 1925 C, 158), we held that the following were proper

elements entering into the determination of a just rate (syllabus):

"The chief elements of just compensation to defendant telephone company are: (a) Operating expense, including administration, labor, interest, taxes, certain items of repair and maintenance; (b) depreciation, physical and functional, including wear and tear of property by use, the constant destruction of property by earth's relentless processes, and supersession and obsolescence of machines and structures by progress; (c) fair return upon the present fair value of the property used and useful in public service."

In *Galveston Electric Co.* v. *City of Galveston*, 258 U. S. 388, 399 (42 Sup. Ct. 351, 66 L. Ed. 678), it was held that income taxes were properly chargeable as an operating expense. The court there said:

"The remaining item as to which the master and the court differed relates to the income tax. The company assigns as error that the master allowed, but the court disallowed, as a part of the operating expenses for the year ending June 30, 1920, the sum of $16,254 paid by the company during that year for Federal income taxes. The tax referred to is presumably that imposed by the act of February 24, 1919, chap. 18, §§ 230–238, 40 Stat. at L. 1057, 1075–1080, which for any year after 1918 is 10 per cent. of the net income. In calculating whether the five-cent fare will yield a proper return, it is necessary to deduct from gross revenue the expenses and charges; and all taxes which would be payable if a fair return were earned are appropriate deductions. There is no difference in this respect between State and Federal taxes or between income taxes and others. But the fact that it is the Federal corporate income tax for which deduction is made, must be taken into consideration in determining what rate of return shall be deemed fair. For under section 216 the

stockholder does not include in the income on which the normal Federal tax is payable dividends received from the corporation.  This tax exemption is therefore, in effect, part of the return on the investment.''

See, also, *Georgia Railway & Power Co.* v. *Railroad Commission of the State of Georgia,* 262 U. S. 625 (43 Sup. Ct. 680, 67 L. Ed. 1144); *Oklahoma Natural Gas Co.* v. *Corporation Commission,* 90 Okla. 84 (216 Pac. 917).

The excess profits tax is somewhat similar to the income tax in that it is a tax the amount of which depends upon a certain net amount arrived at in part by deducting certain operating costs from gross revenue.  The excess profits tax is a tax on the income over and above some specified minimum set in the law providing for the tax.  It is a tax that the utility is required to pay and necessarily a part of the costs of operation of that utility.  In our opinion the commission has no discretion in excluding these taxes in determining the operating expense of the utility.  The commission found that in 1942 the earnings, derived from the rates approved, represented a rate of return of 4.75 per cent.  If the price of electricity can be reduced and still leave a reasonable return on the fair value of all property as required by 2 Comp. Laws 1929, § 11099, then the commission has a duty to make such reduction in rates.

The order of the commission should be affirmed. No costs are allowed as a public question is involved.

WIEST and BOYLES, JJ., concurred with SHARPE, J.

BUSHNELL, J.  I am unable to concur in the result reached by Mr. Justice SHARPE because, in my opinion, affirmation of the order of the commission

will constitute judicial negation of the legislative intent for the creation of the commission.

The controlling and decisive question is:

May defendant Michigan public service commission, under its statutory power to fix reasonable rates at which a public utility will furnish electricity to the public, exclude from the commission's consideration all or a reasonable part of $8,000,000 excess profits which it earns under an existing rate charged its consumers and on which a 90 per cent. profit tax is payable to the Federal government.

It is the duty of the commission, under its statutory power, to fix a just and reasonable rate.* This can be accomplished only by balancing the interest of public utility investors and the consuming public. *Federal Power Commission* v. *Hope Natural Gas Co.,* 320 U. S. 591 (64 Sup. Ct. 281, 88 L. Ed. —).

In the instant case the question narrows down to whether the commission in passing upon a petition to reduce the rate charged the consumer by the public utility should consider and exercise its discretion in respect to the exclusion in whole or in part of "excess profits" of the character hereinbefore noted. That such "profits" exist may or may not demonstrate that the earnings of the utility are excessive.

In the instant case the commission disclaims that it possesses any power to consider this matter. It thus completely ignores its discretionary authority to exclude those items from public utility operating expenses which place unnecessary burdens upon the consumer. Obviously in so doing the commission failed to balance investor and public interests.

The commission arrived at its conclusion in the instant case upon the erroneous assumption that it

---

* See *ante,* 712 *et seq.*—REPORTER.

was wholly without power to exclude from its consideration in fixing the rate to be charged to the consumer the undisputed fact that the presently approved rate produces "excess profits of approximately $8,000,000 on which there is a 90 per cent. excess profit tax." Under such circumstances it cannot be said that a fair and adequate hearing was had before the commission.

The exclusion of an unnecessary element, such as avoidable taxes, is not inconsistent with the holding of this court in *Michigan Public Utilities Commission* v. *Michigan State Telephone Co.,* 228 Mich. 658 (P. U. R. 1925 C, 158), cited and quoted by Mr. Justice SHARPE, and is in harmony with the *Hope Case, supra.* See, also, *Vinson* v. *Washington Gas Light Co.,* 321 U. S. 489 (64 Sup. Ct. 731, 88 L. Ed. — [decided March 27, 1944]).

As I read *Galveston Electric Co.* v. *City of Galveston,* 258 U. S. 388, 399 (42 Sup. Ct. 351, 66 L. Ed. 678), which is intimated by my Brother as controlling, its authority is limited to normal taxes and not to abnormal and avoidable taxes on "excess profits" even though it must be conceded that the term by which such tax is designated is a misnomer. Excess profits are a question of fact for determination by the commission.

Without discretionary power to exclude any and all unnecessary elements of expense in determining a just and reasonable rate, the Michigan public service commission would be an impotent body. It could not have been the intent of the legislature that the commission should lack any necessary power to fix reasonable rates, and the commission should not be permitted to declare itself impotent. It clearly possesses such discretionary power, and that power should be exercised.

The commission should not require the utility corporation to reduce its rates for the period during which it has paid excess profits taxes, nor for a period during which it may be liable for such payment on accrued taxes. It should take into consideration the usual elements of rate determination as well as obsolescence and depreciation of capital assets due to any extraordinary situations arising out of war conditions such as the effect of unusual and heavy war time loads. It may also consider the time lag in a return to normal conditions and the period elapsing before a redetermination can again be made of a reasonable rate. The public should not be required to pay rates that will yield an extraordinary profit to the utility and the stockholders of the utility on the other hand are at all times entitled to a fair return on their investment.

The order dismissing the petition of the city of Detroit is vacated and the cause is remanded for reconsideration and determination, so that the present rate may be maintained or reduced as the commission shall determine in the light of our decision herein. No costs.

North, C. J., and Starr, and Reid, JJ., concurred with Bushnell, J. Butzel, J., did not sit.