No. 12414

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

———————

BOB E. HULIT, M.D.,

Plaintiff and Respondent,

-vs-

ST. VINCENT'S HOSPITAL, a corporation,

Defendant and Appellant,

and

OB-GYN GROUP OF BILLINGS, MONTANA,

Intervening Defendant and Appellant.

———————

Appeal from: District Court of the Thirteenth Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellants:

Crowley, Kilbourne, Haughey, Hanson and Gallagher,
Billings, Montana
Bruce R. Toole argued, Billings, Montana
Sandall, Moses and Cavan, Billings, Montana
John J. Cavan, Jr. argued, Billings, Montana

Amicus Curiae
Chadwick H. Smith argued, Helena, Montana

For Respondents:

Ayers and Alterowitz, Red Lodge, Montana
Michael G. Alterowitz argued, Red Lodge, Montana
Berger, Anderson, Sinclair and Murphy, Billings,
Montana

Amicus Curiae
Paul Baier argued, Baton Rouge, Louisiana

———————

Submitted: November 30, 1973

Decided: MAR 2 5 1974

Filed: MAR 2 5 1974

_Thomas J. Kearney_ erk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court of the thirteenth judicial district, Yellowstone County, the Hon. M. James Sorte presiding. The action was originally brought by Michael J. Crowley and his wife Michele M. Crowley, the Husband-Coached Lamaze Childbirth Association, and Robert E. Hulit, M.D., against St. Vincent's Hospital at Billings, seeking an injunction against the hospital which would require it to allow the presence in the delivery room of Mr. Crowley at the time of the birth of his child and allow Dr. Hulit thereafter to allow other husbands in the delivery room. A temporary restraining order was issued. The Crowley child was born. The trial court dismissed the Crowleys and the Association as plaintiffs at the conclusion of all the evidence, and rendered judgment for Dr. Hulit alone.

The OB-GYN Group, gynecologists of Billings, intervened as party defendant early in the proceedings and is an appellant here. Although the OB-GYN Group is not specifically mentioned in the district court's decree, the decree affects the practicing obstetricians. On appeal, appearing as amici curiae, are the Montana Hospital Association and Mr. Paul R. Baier.

Appellant St. Vincent's Hospital states the issue as being fundamentally whether the court, under all the circumstances, should intrude itself into the administration of the hospital on such a decision as to whether to allow fathers in the delivery room.

The specific issue controlling is the correctness of the district court's finding that the hospital was arbitrary and capricious when adopting the rule that fathers would not be allowed in the delivery room.

A number of other issues are set up and discussed at length in briefs of the various parties. One of those issues is whether there is a right to judicial review of a private hospital's

decision making process. We need not here decide that issue, but will assume that such a review is proper.

Other highly interesting problems are discussed and argued in the briefs concerning doctor-patient relationships. However, we approach this case with the view that licensed hospitals have the authority, acting on the advice of their medical staffs, to adopt rules of self regulation governing the hospital's physicians. Licensed physicians must live according to the rules adopted by their colleagues, even though the physician has direction over his patient. Hull v. North Valley Hospital, 159 Mont. 375, 498 P.2d 136; Section 69-5217(1), R.C.M. 1947.

St. Vincent's Hospital, hereinafter called Hospital, is operated by the Sisters of Charity of Leavenworth. The day to day operation is delegated to the administrator. The Hospital has 207 beds, 140 doctors on the medical staff, and about 565 employees. For a long period of time the Hospital operated under a rule which prevented fathers being in the delivery room.

Respondent, Dr. Hulit, concluded that he should be allowed to bring husband's of his patients into the delivery room to participate in what is referred to as the Lamaze or psychoprophylactic method of childbirth. To achieve his ends, Dr. Hulit petitioned the Hospital, through its various committees, to adopt a new rule. The matter was heard and debated at length. The rule was adopted for a short period time and then rescinded, whereupon Dr. Hulit brought suit.

The Hospital is organized around committees and departments. One department is Obstetrics and Gynecology, others are Internal Medicine, Surgery, General Practice and Pediatrics. The general staff is composed of all the doctors authorized to practice medicine there. The business of the general staff is conducted through an executive committee. The executive committee is elected, one from each department, and three are appointed by the Sisters of Charity. Various committees recommend to the executive committee,

which submits their recommendations to the administrator. The administrator is in turn, for our purposes here, responsible to the Board of Directors of the Sisters of Charity. A subsequent change occurred, but it is not of importance here.

The matter of fathers in the delivery room was first presented to the OB-GYN Group by Dr. Hulit August 6, 1968. In September 1968, Sister Barbara from St. Vincent's Hospital conducted a survey of other hospitals operated by Sisters of Charity of Leavenworth. The matter was considered by the OB-GYN Group again on October 22, 1968. It was considered by the executive committee on September 22, 1969, at which time a thorough discussion was conducted and the rule affirmed that no father be allowed in the delivery room. On October 27, 1969, Dr. Hulit made a complete presentation of his proposal to the executive committee. The executive committee then reversed its earlier position and resolved that fathers should be allowed in the delivery room.

The matter was next brought up at the regular staff meeting on December 8, 1969. The general staff thought the committee had acted improperly in overruling the position of the OB-GYN Group. Another meeting was held on December 22, 1969, at which both members of the executive committee and the OB-GYN Group were present. Final action was not taken at this meeting, and the matter was again thoroughly discussed at the executive meeting January 26, 1970. At this meeting the executive committee reversed its earlier position and adopted the rule that fathers would not be allowed in the delivery room.

Particularly, the doctors at this time were concerned about the possibility of malpractice suits arising out of this practice. Although Dr. Hulit was not present at all meetings, he was given ample opportunity to explain his position and the practice he wished to follow. Another meeting occurred on April 22, 1970, at which time Dr. Hulit again asked and was allowed to present his position. Additional meetings ensued, and in particular at the meeting of July 27, 1970, there was extended

- 4 -

discussion as to the merits and objections to the system. Finally, the matter was last aired at a special meeting September 3, 1970, and the previous action excluding fathers from the delivery room was affirmed. The issue had been thoroughly considered and opportunity afforded Dr. Hulit and the OB-GYN Group to present their sides.

Sister Alice Marie, the administrator of St. Vincent's Hospital, being of the opinion that this was to a significant extent a medical question, accepted the position taken by the executive committee, both on the occasion when it allowed fathers in the delivery room and when it subsequently reversed its stand.

In determining whether the Hospital was arbitrary and capricious in following the recommendation of the executive committee, one must consider the factors which the administrator had to take into account and weigh. Sister Alice Marie's objectives as an administrator are set forth in her testimony, wherein she points out that it is her responsibility to deliver service to thousands of people at the least possible cost; that she is the coordinator of the activities of the board of trustees, the medical staff, and the administrative staff. That it is her responsibility to see that policies are carried out and to do so she must have harmony with all the personnel involved, which in turn places a strong motive upon her to follow decisions made through the normal decision making process. There are hundreds of policies in existence, most in writing, and it is clear that the administrator cannot perform by overruling the actions of the staff, except in the most special situations.

On the specific issue here, Sister Alice Marie pointed out some of her reasons. There was not any one item that caused her to make the final decision, but these were considered: increased possibility of infection; concern about malpractice suits; inadequate physical facilities which do not allow room for fathers to change their clothes without possible bothering of the doctors; increased costs; which though they may not be great have to be

taken into account, such as additional nursing time, providing gowns, masks, booties, etc.; greater tension in the delivery room caused by the presence of the father which might cause some of the nurses to not perform as well; lack of privacy to other women getting ready to deliver; the strict policy concerning visitors in surgical areas favored by the state board of health; and the furtherance of harmony between physicians so that there would always be cover should Dr. Hulit be absent.

In reading the entire transcript, it is apparent that with respect to most of these concerns there was in fact two sides. But, we find the concerns of the administrator were reasonable concerns to be taken into account.

Respondent argues at length that the other side of the coin would show the administrator's concerns to be unwarranted and not proven. Further, the district court found to the contrary and that the trier of the facts should not be overturned unless there was no credible evidence to sustain it.

But, what did the trial court hold? Having assumed here that the trial court could review the decision of the hospital, this question is pertinent. The trial court found, in a conclusion of law, that:

> "I. The decision of St. Vincent's Hospital in disallowing the practice of the Lamaze or psycho-prophylactic method including having Lamaze-trained fathers in the delivery room with the attending plaintiff physician's consent is arbitrary and capricious because there are no medical or scientific facts to support the decision."

This conclusion of arbitrary and capricious action is simply not supported by the record. A proper statement of a court's function in this area is found in Sosa v. Board of Managers of Val Verde Memorial Hospital, (5th Cir. 1971), 437 F.2d 173, 177:

> "The court is charged with the narrow responsi-bility of assuring that the qualifications imposed by the Board are reasonably related to the opera-tion of the hospital and fairly administered. In short, so long as [hospital actions] are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus."

Our function then is twofold. First, to determine whether due process was accorded. From our recitation heretofore, it is clear that it has been. Second, to determine whether there was an arbitrary and capricious decision made by the Hospital administrator. That a conscientious judgment was made is clear--just the opposite of an arbitrary and capricious one. Unquestionably the judgment is a debatable one, as witness the expert medical judgments involved here. Respondent states in his brief that the OB-GYN Group of doctors had "closed minds" and would not listen to reason. When one opinion does not agree with another, a "closed mind" is not the answer.

Here, competent medical opinions were expressed. Those competent medical opinions are sufficient evidence to uphold the findings and decision of the Hospital and that decision was not, as the trial court found, arbitrary and capricious.

Accordingly, we hold the district court's judgment be reversed and the injunction set aside. We answer our original question--the trial court should not have intruded itself into the administration of the Hospital where the Hospital had acted in good faith on competent medical advice.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.