GENERAL TELEPHONE COMPANY OF MICHIGAN v PUBLIC
SERVICE COMMISSION

1. Appeal and Error—Mootness—Change in Parties' Position—
   Public Significance.

   An appeal does not become moot, despite a change in the position
   of the parties through the passage of time, when the issue is of
   public significance and is likely to recur.

2. Appeal and Error—Mootness—Public Service Commission—
   Rate Changes—Errors—Likelihood of Recurrence.

   An appeal from the establishment of a telephone company's rates
   by the Public Service Commission in 1975 has not been ren-
   dered moot by the establishment of a new rate schedule in 1977
   which supersedes the 1975 rates where the issue is whether the
   commission erred in establishing the earlier rates, and such
   errors are likely to recur unless addressed by the Court of
   Appeals.

3. Public Service Commissions—Utilities—Costs—Purchases From
   Affiliates—Rate of Return—Reasonableness.

   The test of whether a utility, when requesting a rate increase
   before the Public Service Commission, carries its burden of
   proof as to the reasonableness of its purchases of equipment
   from its affiliates should not be limited to the affiliates' rate of
   return on sales to the utility; the rate of return may be
   considered as *some* evidence of the reasonableness of such
   purchases, but not to the exclusion of other relevant evidence.

4. Public Service Commissions—Utilities—Telephone Companies—
   Purchases From Affiliates—Reasonableness—Rate of Re-
   turn.

   The Public Service Commission erred in finding that a telephone
   company failed to establish that purchases of equipment from
   an affiliate were reasonable where the commission considered
   only the rate of return to the affiliate on the sales and failed to

---

References for Points in Headnotes
[1, 2] 5 Am Jur 2d, Appeal and Error § 760 *et seq.*
[3, 4, 5, 6, 7] 64 Am Jur 2d, Public Utilities § 211 *et seq.*

consider evidence that the sales were made at the same, similar or lower prices than charged to non-affiliated companies.

5. PUBLIC SERVICE COMMISSIONS—UTILITIES—INTEREST COST—AVERAGE COST—YEAR-END COST.

The use by the Public Service Commission of a 13-month average cost of debt capital in computing a utility company's imputed income tax savings from interest deductions was error where during the test year, upon which costs are calculated, the company reduced its short term debt cost by issuing several million dollars worth of preferred stock and did not in fact derive the income tax savings imputed to the company by the commission; the proper method of determining the company's interest cost where the capital structure was materially distorted by the new financing arrangement would have been to consider the year-end cost of debt capital rather than the 13-month average.

6. PUBLIC SERVICE COMMISSIONS—UTILITIES—ANTICIPATED REVENUE—ANTICIPATED EXPENSES.

Ordinarily, if anticipated increases in revenue are considered by the Public Service Commission in passing upon a utility company's application for a rate increase, anticipated increases in expenses should also be considered.

7. PUBLIC SERVICE COMMISSIONS—UTILITIES—ANTICIPATED REVENUE—SPECULATION—ANTICIPATED EXPENSES.

A circuit court properly disallowed a positive adjustment by the Public Service Commission to a telephone company's projected operating income where the adjustment was based upon anticipated increases in directory advertising which were speculative, and where the commission did not also consider an anticipated increase in labor costs to the company.

Appeal from Ingham, James T. Kallman, J. Submitted June 10, 1977, at Lansing. (Docket No. 29603.) Decided September 21, 1977. Leave to appeal applied for.

General Telephone Company of Michigan applied to the Michigan Public Service Commission for an increase in rates and charges. The commission granted increases in an amount less than requested. The company appealed to the circuit court, which affirmed in part and reversed in part

the order of the commission. The company appeals, and the commission cross-appeals. Affirmed with modification.

*John Robert Jones, David Lee,* and *William D. Parsley,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Arthur E. D'Hondt,* Assistants Attorney General, for defendant.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

T. M. BURNS, J. On November 15, 1974, General Telephone Company of Michigan filed an application with the Michigan Public Service Commission requesting changes in its rates and charges so as to increase its revenues in the amount of $12,793,-432 annually. The test period was the year ending September 30, 1974. On August 4, 1975, the commission granted rate and charge increases intended to increase the company's annual revenue by $9,900,725, or $2,892,707 less than requested.

The company appealed to the Ingham County Circuit Court, and by opinion dated June 30, 1976, the circuit court affirmed in part and reversed in part the order of the commission, and directed the commission to delete the positive adjustment of $95,976 to the company's operating income for increased advertising revenue from increased directory advertising rates and to increase the company's rates and charges to recover the additional $95,976.

On October 25, 1976, the commission, pursuant

---

* Cricuit judge, sitting on the Court of Appeals by assignment.

to the circuit court order, authorized the company to revise its tariff to produce approximately $200,-206 in additional revenue, that being the amount necessary to produce $95,976 of net operating income, after paying income taxes.

The company filed this appeal of right from the circuit court's order and the commission cross-appealed.

The initial question which this Court must address is whether the appeal has become moot because the rates established by the commission have been superseded by a January 24, 1977, order, as amended March 7, 1977, which established new rates and charges for the company based on a test year ending September 30, 1975, which will produce a decrease in annual revenue for the company of $2,158,475. The issue arises because on December 19, 1975, while the present matter was pending in the circuit court, plaintiff filed another application with the commission seeking an increase in its annual revenue of $10,228,517. It is the commission's position that this Court could not now grant the company an additional rate increase based on the test year ending September 30, 1974, citing *Michigan Bell Telephone Co v Public Service Commission,* 315 Mich 533, 538, 544; 24 NW2d 200, 202, 204 (1946).

In that case the Supreme Court said the fundamental question was:

"Has the commission statutory power to order retroactively a refund to be made by the telephone company to its subscribers out of charges for services rendered (and in large part paid prior to the date of the order), such charges having been made in conformity with the existing rates fixed by the commission (or its predecessor) and in effect during the time the services were rendered?"

The Court ruled:

"We conclude that orderly protection of the rights of the parties concerned requires the holding in law that a lawfully established rate remains in force until altered by a subsequently established lawful rate."

Later, in *General Telephone Co of Michigan v Public Service Commission*, 341 Mich 620, 632, 633; 67 NW2d 882, 887, 888 (1954), the Supreme Court said:

"This Court made it very clear in *Michigan Bell Telephone Co v Public Service Commission*, 315 Mich 533 (66 PUR NS 287), that the commission cannot establish a retroactive rate thereby correcting injustice caused by delay in establishing rates for the past. When failure to provide adequate rates in the past cannot be remedied by retroactive orders, it follows that every reasonable effort should be made by the commission to eliminate unnecessary delay and to pass judgment on facts that will not only reflect upon the present but a reasonable period in the future. The commission failed to meet this test not only at its hearing but failed again when the testimony received before the court was transmitted to it, and it was in error in informing the court that the company's 'remedy in this regard is simple and expedient, namely, the presentation of a new rate application to this commission for the proper determination of such facts affecting its revenues, expenses and services as have occurred since the close of the record upon which our order was based.' The commission was in error in refusing to consider the testimony transmitted by the court, and the trial court properly held that the commission's order of December 5, 1952, failed to meet statutory and constitutional requirements.

"The court by its decree did not establish a rate, but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond of $1,000,000, and further provided that the com-

pany 'set up on its books and records a reserve to which it shall credit currently, as soon as practicable after the end of each calendar month, a gross sum equal to the difference between the revenues actually billed in such month and those revenues which would have been billed if the rates and charges prescribed in said rate order T552-52.11.'

\* \* \*

"We believe that the circuit court properly exercised its general equity jurisdiction to protect the company from confiscatory rates during the interval that the court realized must elapse between the time the commission refused to give consideration to the testimony regarding the impact of its order upon the company during 1952 and the time when said commission would give that consideration."

The company concedes that the commission could not now change the rates and charges authorized in the August 4, 1975, order, which have been superseded by the 1977 orders. However, the company does contend that the same allegedly incorrect adjustments to its operating revenues were made in the January 24, 1977, order, as amended, and probably will be made in future rate cases until resolved by an appellate court.

In *Regents of the University of Michigan v State of Michigan,* 47 Mich App 23, 27; 208 NW2d 871, 873 (1973), this Court said:

"The courts of this state have long recognized that an appeal does not become moot, despite the change in position of the parties through the passage of time, when the issue is of public significance and is likely to recur."

On appeal of the *Regents* case, 395 Mich 52; 235 NW2d 1 (1975), the Supreme Court said that while the challenges to the 1971 appropriations act tech-

nically were moot the Court would address those issues of continuing pertinence.

In *Robson v Grand Trunk Western R Co,* 5 Mich App 90; 145 NW2d 846 (1966), this Court stated that the question was not moot where the error complained of had occurred in the past and might continue in the future. See also *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968), and *Dartland, ex rel De Motts v Hancock Schools,* 25 Mich App 14; 181 NW2d 41 (1970).

In *Milwaukee and Suburban Transport Corp v Public Service Commission,* 268 Wis 573; 68 NW2d 552 (1955), the Wisconsin Supreme Court held that a controversy over the method of computation of depreciation presented a continuing controversy which was not ended by the September 17, 1953, fare order being superseded by the 1954 fare orders. The Court said that it considered the fact that the commission had a statutory duty to fix or approve fares which were "just and reasonable" conferred the right of judicial review over the method of computing depreciation in view of the contention advanced that the employment of such method necessarily resulted in unreasonable and confiscatory fares.

The Michigan Public Service Commission also has a statutory duty to provide just and reasonable rates. *General Telephone Company of Michigan v Public Service Commission, supra.* We think that the commission has erred in this case and that such errors are likely to recur in the future unless this Court addresses certain issues raised by the parties.

We will now consider the question of whether the commission erred in holding that the company had not sustained the burden of proving the reasonableness of its purchases from affiliates.

The commission said that the test to apply was whether the affiliates' rate of return on the sales to the company exceeded the rate of return the commission had authorized for the company. In effect, the commission held that the company did not carry the burden of proof as to the reasonableness of its purchases from affiliates when those affiliates made more profit on the sales than the commission had authorized for the company. Specifically, the commission found that the affiliate, GTE Automatic Electric, Inc., which sold the company equipment, realized excess profits from those sales.

The commission relied on *Detroit v Public Service Commission,* 308 Mich 706; 14 NW2d 784 (1944), as authority for considering only excess profits in determining whether or not purchases from affiliates were reasonable. That case did not involve reasonableness of purchases from affiliates. Further, the question decided was whether the commission in passing upon a petition to reduce the rate charged the consumer by the public utility should consider and exercise its discretion in respect to the exclusion in whole or in part of excess profits upon which a 90% Federal profit tax had been paid. The commission disclaimed any power to consider the matter of excess profits. The Court held that the commission had within its discretionary authority the right to consider exclusion of all or part of excess profits, but that *the fact that such profits existed might or might not demonstrate that the earnings of the utility were excessive.*

In the present case there is even less reason to rely solely on a test of excess profits or excessive rate of return on affiliates' sales to the company. The affiliates have a risk factor which public utili-

ties do not and may therefore quite reasonably need a higher rate of return than a public utility. By limiting its test of reasonableness to the rate of return on the transactions, the commission ignored testimony that the sales were made at less than competitive prices.

We are impressed with the proposed opinion of the two administrative law judges on this issue, although it was not adopted by the commission. They said, in part, that it was clear from the evidence in the case that the price the company paid to its affiliate, GTE Automatic Electric, Inc., was the same, similar or lower than prices which the company would have paid to nonaffiliated companies for similar items and that the commission's staff had not contested the reasonableness of the prices. Further, the administrative law judges noted that since 1971 Automatic's return on equity had been below that authorized for the company. They also pointed out that it was apparent from the evidence that Automatic's prices were determined by factors other than the profit needs of the parent corporation, and that it made substantial sales to non-affiliated companies.

Little would be gained at this time by a detailed review and evaluation of the evidence of reasonableness presented by the company as to each of the challenged transactions with affiliates. The commission cannot now adjust the specific rates in question. As to the future, we advise the commission that it may consider the rate of return earned on sales from affiliates as *some* evidence of the reasonableness of the purchases, but not to the exclusion of other relevant evidence. Also in the future, the commission should state in its opinion its reasons for finding the company's proofs as to reasonableness inadequate, if it does so find. This

would assist in swifter, more meaningful judicial review of the commission's determinations.

The other issue raised by the company is whether the circuit court erred in holding that the commission could adjust the company's net operating income to reflect an alleged income tax saving from an imputed interest cost on *pro forma* financing using a 13-month average cost of debt capital.

The company can increase its operating income by income tax savings arising out of interest deductions, but in this case the company issued several million dollars worth of preferred stock and reduced its short term debt cost. The commission's use of a 13-month average instead of a year end cost of debt capital resulted in a higher interest which in turn resulted in a greater income tax savings. Because of the dramatic change in the capital structure as a result of the issuance of the stocks, the trial court found no error in the commission's use of the average instead of the year end cost of debt capital.

However, it is undisputed that the company's stock issuance was authorized by the Public Service Commission, pursuant to MCLA 460.301; MSA 22.101. Further, it is undisputed that the company did not in fact derive the income tax savings imputed to it by the commission.

Again we are favorably impressed by the proposed opinion of the administrative law judges which states, in part, that the commission staff justified its position based on the commission's practice set forth in *Re Michigan Bell Telephone Company,* 85 PUR3d 467 (1970), but that in that case the commission adopted a year end capital structure.

Additionally, the administrative law judges said it was improper to apply an average cost of debt

capital to determine income tax savings due to *pro forma* financing when there has been a significant and material distortion of the capital ratios during the test year. The result in such an instance is not representative of the anticipated interest costs in the future. They point out that the major difference in the positions of the commission staff and the company results from the conversion of short-term debt, on which interest is paid which is deductible from income tax, to preferred stock on which dividends are paid which are not deductible from income tax. On this basis alone, they conclude that the position of the commission staff must be rejected. We agree.

In *Public Service Commission v Indiana Bell Telephone Co,* 235 Ind 1; 130 NE2d 467 (1955), the Court said that the commission could not arbitrarily disallow Federal taxes which the company had paid or was obligated to pay, by assuming a tax saving under a capital structure which did not exist.

In *General Telephone Co v Public Utilities Commission,* 174 Ohio St 575; 191 NE2d 341 (1963), the Court wrote that there was no tax advantage to the company because the Federal income tax law did not permit the deduction of hypothetical interest in computing income tax.

In *Application of Diamond State Telephone Co,* 51 Del 525; 149 A2d 324 (1959), the Court said the commission could not arbitrarily disallow actual expenses on the theory of reforming the company's capital structure.

In the present case the commission should not have used a 13-month average cost of debt capital as the way to determine the interest cost for *pro forma* financing since it was not representative of anticipated interest costs. Again we are unable to

grant the company any direct remedy since the
rates in question have been superseded by subsequent orders of the commission. Nevertheless, we
have considered this issue for the purpose of giving
guidance to the commission in future cases.

The final question was presented in the commission's cross-appeal. It is argued that the circuit
court erred in holding that the commission could
not adjust the company's net operating income by
$95,976 to reflect anticipated net increases in directory advertising occurring after the close of the
test year because it failed to deduct related anticipated expenses.

Ordinarily, if anticipated increases in revenue
are considered by the commission, anticipated increases in expenses should also be considered.
*Michigan Consolidated Gas Co v Public Service
Commission,* 389 Mich 624; 209 NW2d 210 (1973).
However, it is the position of the commission in
this case that the record only showed a possible
wage increase and that this was uncertain in
amount and thus too vague to be included.

In discussing this issue the circuit court wrote:

"In the present case the Administrative Law Judge[s]
considered the expected increase in advertising revenue
to be too speculative. The Commission nevertheless
made an adjustment for the expected increase in revenue. In so doing it failed to consider an increase in
wages under a labor contract that was to become effective at the end of the period it was considering for the
additional directory revenues. Under the holding in
*Michigan Consolidated Gas* (supra) this was arbitrary
and unreasonable. The Commission erred in making a
positive adjustment of $95,976 to Plaintiff's net operating income."

The company argues that the directory advertising contracts that were the basis of the projected

increase in revenue were not in existence so the fact that the labor contracts were not in existence should not have precluded projecting an increase in labor costs. Further, the company contends that the whole subject of an increase in directory revenues beyond the test year is speculative and lacks sufficient support in the record to warrant any adjustment.

The company did not introduce evidence estimating the amount of the anticipated increase in labor costs. However, its operating vice president did testify that increases in direct labor costs were expected following contract negotiations scheduled for May, 1975.

We are inclined to think that the anticipated increases in directory advertising revenues extending beyond the test year were too uncertain to have been credited by the commission. The administrative law judges' opinion stated that in view of the present economic conditions in Michigan, the conclusion that directory revenues will increase at the same rate as in the past was too speculative for adoption.

Also, we agree with the circuit court that once the commission did consider the anticipated increases in directory revenue extending beyond the test year, it should also have considered the anticipated wage increases for that same period even though they too were somewhat speculative. Therefore, we decline to set aside the circuit court's disallowance of the $95,976 positive adjustment to the company's operating income.

The circuit court is affirmed, except as modified herein. No costs, a public question being involved.