COLOMBINI v DEPARTMENT OF SOCIAL SERVICES

Docket No. 78-844. Submitted February 15, 1979, at Lansing.—Decided October 16, 1979.

Theresa Colombini and others brought an action in November, 1977, in Ingham Circuit Court, to enjoin the Department of Social Services (DSS) from operating its client reporting system (CRS) in 11 Michigan counties, alleging that § 59 of the annual DSS appropriations act (1977 PA 105) terminated the CRS program after December 1, 1977, absent proof of cost-effectiveness and approval from the Senate and House appropriations committees. The plaintiffs also attacked the DSS's implementation of CRS as an attempt to avoid the rule-making procedures of the Administrative Procedures Act (APA).

The defendant opposed the injunction, arguing that § 59 of the appropriations act was unconstitutional because it violated the title-object clause of the Michigan Constitution, constituted an attempt to amend sections of the Social Welfare Act without reenacting and republishing the entire amended act and impermissibly infringed on the executive branch's power contrary to the Michigan Constitution. The DSS further contended that its promulgation of the CRS program qualified for an exemption to the APA rule-making procedures.

The Ingham Circuit Court, Thomas L. Brown, J., upheld the constitutionality of § 59 of the DSS appropriations act. It also ruled that the CRS program was excluded from the definition of a rule by a provision of the APA. The court then issued an injunction against the implementation of the CRS program until the end of the fiscal year which commenced October 1, 1977, or until seven days after plaintiff's counsel had been served with notice of legislative approval for further implementation, whichever should occur first.

The defendant appeals and plaintiffs cross-appeal. On October

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 768.
[2] 73 Am Jur 2d, Statutes §§ 99, 145, 146.
[3] 73 Am Jur 2d, Statutes §§ 99, 102, 122.
[4] 73 Am Jur 2d, Statutes § 139.
[5] 1 Am Jur 2d, Administrative Law § 46.

31, 1978, the plaintiffs moved to dismiss the defendant's appeal as moot, since neither the trial court's order nor the legislation on which it was based was in effect due to the passage of time. *Held:*

1. While the issue may be technically moot, it is of public significance and is likely to recur. The Court of Appeals will consider the issue since the DSS appropriations act for the fiscal year commencing Oct 1, 1978, had a provision (§ 65 of 1978 PA 401) similar to the one in question for the preceding year.

2. § 65 of the 1978 appropriations act does not conflict with the title-object clause of the Constitution. The provision limits or forbids expenditures of appropriated funds and is directly related to the object of the act as stated in its title.

3. § 65 is not an unconstitutional attempt by the Legislature to usurp powers of the executive branch. This provision merely eliminates funding for one method of determining eligibility for public assistance, the costs of which outweigh its benefits.

4. It is unnecessary to rule on the defendant's allegation that the Legislature impliedly or directly amended the Social Welfare Act by terminating funding for CRS without republication and reenactment of the entire amended act. Failure to appropriate money for a particular program cannot logically be construed as a repeal or amendment of prior substantive laws requiring reenactment and republication. Secondly, the Legislature has retained the statutory power to make all substantive legislative enactments subject to its appropriations decisions.

5. The trial court improperly found the CRS to be exempt from the APA's rule-making requirements under the provision of the APA which exempts instructions concerning completion of a simple form. However, the CRS does qualify for such an exemption as an exercise of a permissive statutory power.

Affirmed.

1. APPEAL AND ERROR — MOOTNESS — TECHNICALLY MOOT ISSUES — RECURRING ISSUES — PUBLIC SIGNIFICANCE.

Appellate courts of this state will consider the merits of technically moot issues if the issues are of public significance and are likely to recur.

2. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — PURPOSE.

The goal of the title-object clause of the Michigan Constitution is to insure that the legislators and the public have proper notice of an act's legislative content; consistent with this constitutional purpose, an act may contain all matters germane to its

object, and any provisions which directly relate to, carry out and implement the principal object (Const 1963, art 4, § 24).

3. Constitutional Law — Title-Object Clause — Appropriations Act — Limitation on Expenditures.

A provision in an act appropriating funds for the Department of Social Services which limits or forbids expenditures of funds appropriated by the act is directly related to the object of the act and does not violate the title-object clause of the Michigan Constitution where the object of the act, as stated in its title, is to make appropriations for the Department of Social Services and to provide for the expenditure of those appropriations (Const 1963, art 4, § 24).

4. Constitutional Law — Amended Acts — Republication — Reenactment — Appropriations Act.

The failure of the Legislature to appropriate money for a particular program cannot logically be construed as a repeal or amendment of prior substantive laws so as to require compliance with the provision of the Michigan Constitution which prohibits the amendment of an act without reenacting and republishing the entire amended act (Const 1963, art 4, § 25).

5. Administrative Law — Agency Policy — Permissive Statutory Power.

A policy of a state agency is an exercise of a permissive statutory power and is not a rule requiring formal adoption if the agency policy follows from the statutory authority of the agency.

*Edward J. Hoort,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija, William K. Basinger* and *Erica Weiss,* Assistants Attorney General, for defendant.

Before: M. J. Kelly, P.J., and M. F. Cavanagh and MacKenzie, JJ.

M. F. Cavanagh, J. Plaintiffs-appellees filed suit in November, 1977, to enjoin the Department of Social Services (DSS) from operating its client reporting system (CRS) in 11 Michigan counties. In their complaint, plaintiffs alleged that § 59 of the

annual DSS appropriations act (1977 PA 105) terminated the CRS program after December 1, 1977, absent proof of cost-effectiveness and approval from the Senate and House appropriations committees. Plaintiffs contended that because this approval had been obtained for only two of the 11 counties, continued DSS expenditures for CRS in the remainder were illegal. Finally, they also attacked the DSS's implementation of CRS as an attempt to avoid the rule-making procedures of the Administrative Procedures Act.

Defendant opposed the injunction on the grounds that § 59 of 1977 PA 105 was unconstitutional, claiming it violated Const 1963, art 4, § 24 (the title-object clause), constituted an attempt to amend sections of the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401 *et seq.,* without reenacting and republishing the entire amended act (Const 1963, art 4, § 25) and impermissibly infringed on the executive branch's power contrary to Const 1963, art 3, § 2. DSS further contended that its promulgation of the CRS program qualified for an exemption to APA rule-making under MCL 24.207; MSA 3.560(107).

After hearing and argument, the trial court upheld the constitutionality of § 59. It also ruled that the DSS's CRS program was excluded from the definition of a rule by § 7(h) of the Administrative Procedures Act. MCL 24.207(h); MSA 3.560(107)(h). The court then issued a permanent injunction against defendant, as follows:

"IT IS FURTHER ORDERED that defendants be, and hereby are, permanently ENJOINED, *until October 1, 1978* or until seven (7) days after the service upon counsel for Plaintiffs of evidence of approval of the further implementation of the CRS system by state House and Senate appropriations committees, which-

ever first occurs, from implementing the CRS system in counties other than Ingham and Genesee and that the above-titled cause be, and the same hereby is, DISMISSED." (Emphasis added.)

Defendant appeals from this order. On October 31, 1978, plaintiffs moved to dismiss the appeal as moot, since neither the court's order nor the legislation on which it was based was in effect due to passage of time.

1977 PA 105 expired with the end of the fiscal year in September, 1978. It has since been replaced by 1978 PA 401. However, § 65 of the 1978 appropriations act prohibits all expenditures of DSS funds for the CRS program in all counties.

Despite differences in language from § 59 of the 1977 act, § 65 also has the effect of terminating the CRS program. Therefore, defendant argues that in spite of technical mootness, the issues raised continue to warrant judicial scrutiny.

Courts in this state have indicated their willingness to consider the merits of technically moot issues, if they are "of public significance and [are] likely to recur". *Regents of the University of Michigan v Michigan,* 47 Mich App 23, 27; 208 NW2d 871 (1973), *aff'd* 395 Mich 52; 235 NW2d 1 (1975). *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968), *General Telephone Co of Michigan v Public Service Commission,* 78 Mich App 528, 534; 260 NW2d 874 (1977), *lv den* 402 Mich 901 (1978).

The Legislature's ability to control the continuance of substantive programs through control of appropriations and the alleged importance of CRS to efficient administration of public assistance present questions of self-evident public significance. Nevertheless, the automatic expiration of each appropriations act means that these legiti-

mate questions may recur yearly and yet evade judicial review despite their importance. We therefore decline to dismiss the present appeal for mootness.

Prior to discussing the specific constitutional infirmities defendant raised to the Legislature's use of an appropriations provision effectively to terminate a substantive program, the distinct difference in the wording of § 65 of the 1978 act and § 59 of the 1977 act must be noted. Section 59, 1977 PA 105 provided as follows:

"The client reporting pilot program, which evaluates on a monthly basis, the income and resources of aid to families with dependent children recipients, *shall terminate* effective December 1, 1977. The client reporting system shall only be continued and implemented in other counties when the department of social services documents its cost effectiveness and the implementation is approved by the senate and house appropriations committees. (Emphasis added.)

In contrast to § 59's explicit termination of CRS, § 65(1) clearly involves only a straight-forward spending limitation:

"*Funds shall not be expended* by the department of social services after October 1, 1978, for the pilot program of monthly client reporting in Genesee and Ingham counties, and funds shall not be expended by the department to resume or implement any system of monthly client reporting without the approval of the house and senate appropriations committees. (Emphasis added.)

This change in language effectively disposes of the alleged title-object violation by the provision in the 1977 act. The goal of the title-object clause is to insure that the legislators and the public have

proper notice of an act's legislative content. Consistent with this constitutional purpose, an act may contain all matters germane to its object, and any provisions which "directly relate to, carry out and implement the principal object". *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 465-467; 208 NW2d 469 (1973), and the cases cited therein. Clearly, a provision which limits or forbids expenditures of appropriated funds is directly related to 1978 PA 401's object, as stated in its title, to "make appropriations for the department of social services * * *; to provide for the expenditure of those appropriations". We thus find no constitutional infirmities in § 65 of 1978 PA 401 on these grounds.

We also find no unconstitutional attempt by the Legislature in § 65 to usurp executive branch powers. This provision merely eliminates funding for one method of determining eligibility for public assistance costs of which outweigh its benefits. It does not subject the daily administration of social welfare programs to legislative oversight. Likewise, the requirement of cost-effectiveness studies on CRS from the DSS before reimplementation of the program will be allowed involves a proper legislative attempt to insure the effective spending of public monies.

Finally, we do not find it necessary to rule on the defendant's allegation that the Legislature impliedly or directly amended the Social Welfare Act by terminating funding for CRS without republication and reenactment contrary to Const 1963, art 4, § 25.

In the first place, failure to appropriate money for a particular program cannot logically be construed as a repeal or amendment of prior substantive laws requiring compliance with art 4, § 25.

The DSS still retains its authority under the Social Welfare Act to conduct eligibility reviews even on a monthly basis. The Legislature has simply indicated in § 65 that it will not pay for one method of review until convinced of its cost effectiveness. As such, its decision is essentially a political one.

Secondly, the Legislature has retained the statutory power to make all substantive legislative enactments subject to its appropriations decisions. MCL 21.9; MSA 3.289 (enacted prior to the Social Welfare Act), forbids payments from the state treasury for any program in the absence of a specific appropriation. Section 65 is a reflection of this retained power.

We next consider the issue raised by plaintiff on cross-appeal, challenging the trial court's ruling that the CRS is exempted by § 7(h) from the definition of a "rule" and thus not subject to the APA's rule-making requirements. MCL 24:207(h); MSA 3.560(107)(h), relied on by the trial court, exempts

"A form with instructions, an interpretative statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory."

We disagree with the trial court's finding that this exemption applies to the CRS system. It is apparent that the reporting system involved more than instructions concerning completion of a simple form; a client who failed to comply with the instructions clearly risked termination of public assistance. However, we decline to reverse the trial court's decision, since we are persuaded that the CRS qualifies for exemption under § 7(j) of the APA, MCL 24.207(j); MSA 3.560(107)(j), as involving

"A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights and interests are affected thereby."

As explained in *Village of Wolverine Lake v State Boundary Comm,* 79 Mich App 56, 59; 261 NW2d 206 (1977), if an agency policy follows from its statutory authority, the policy is an exercise of a permissive statutory power and not a rule requiring formal adoption. Given our decision that 1978 PA 401, § 65 is a mere funding limitation, and not a limit on the DSS's authority to review eligibility for assistance, under MCL 400.43; MSA 16.443, the DSS's implementation of its review authority by the CRS program falls squarely within the rule enunciated in *Wolverine Lake, supra.*

The decision of the trial court is therefore affirmed.