WHITMAN v MERCY-MEMORIAL HOSPITAL

Docket No. 64459. Submitted February 18, 1983, at Detroit.—Decided
     August 16, 1983.

   Karen E. Whitman and Edward T. Coch filed in Monroe Circuit
      Court a petition and order to show cause why plaintiff Coch
      should not be allowed to be present in the delivery room when
      their child was born and sought an injunctive order prohibiting
      the Mercy-Memorial Hospital from refusing to permit Coch in
      the delivery room at the time of the birth. The hospital had
      refused to permit Coch in the delivery room at the time of the
      birth of the child on the basis of a formally adopted policy of
      the hospital that only "a husband or member of the immediate
      family of the mother giving birth" would be permitted in the
      delivery room as an authorized participant. Coch, while father
      of the child, is not married to Whitman. Plaintiffs alleged that
      the refusal to permit Coch in the delivery room on the basis of
      his marital status was a violation of the equal accommodations
      provisions of the Elliott-Larsen Civil Rights Act. Following a
      hearing, Daniel L. Sullivan, J., denied plaintiffs' petition. Plain-
      tiffs sought leave to appeal and immediate consideration in the
      Court of Appeals. Leave to appeal was granted and the order of
      the Court of Appeals prohibited defendant from refusing to
      allow plaintiff Coch to accompany plaintiff Whitman during
      labor and delivery of their child on the basis that they were not
      married. The Court of Appeals permitted the Michigan Depart-
      ment of Civil Rights to intervene. During the pendency of the
      appeal, the child was born at the University of Michigan
      Woman's Hospital with Coch in attendance. *Held:*

      1. While this dispute is technically moot, the issue involved
      in the appeal is of public significance and likely to recur in the
      future. Accordingly, the issue should be decided on the merits
      of the issue raised.

      2. Defendant hospital is a place of public accommodation
      within the meaning of the provisions of the Elliott-Larsen Civil

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 5 Am Jur 2d, Appeal and Error § 768.
[2, 3] 15 Am Jur 2d, Civil Rights § 50.
   40 Am Jur 2d, Hospitals § 12.

Rights Act and is subject to the provisions of that act. The rule adopted by the hospital clearly prohibited plaintiff Coch's presence because he was not married to the mother of the child, while permitting a man married to the mother to be in attendance in the delivery room. Denial of full and equal enjoyment of facilities, privileges and advantages in a place of public accommodation on the basis of marital status is prohibited by the Elliott-Larsen Civil Rights Act.

Reversed.

BRONSON, J., dissented. He would hold that the Court of Appeals should decline to decide the merits of the issue raised in this appeal because the issue raised does not have general public significance, the issue will not inevitably recur, and in all probability the issue will not recur between these parties. He would dismiss the appeal and affirm on the basis of mootness.

## OPINION OF THE COURT

1. APPEAL — MOOTNESS.

Appellate courts of this state will consider the merits of technically moot issues if the issues are of public significance and are likely to recur.

2. CIVIL RIGHTS — HOSPITALS — PUBLIC ACCOMMODATIONS.

A hospital whose services are offered or made available to the public is a place of public accommodation subject to the provisions of the Elliott-Larsen Civil Rights Act.

3. CIVIL RIGHTS — MARITAL STATUS — HOSPITALS — CHILDBIRTH.

The refusal of a hospital to permit a man who is the father of a child but not married to the mother to be present in the delivery room when that child is born while permitting the presence of "a husband or other member of the immediate family of the mother giving birth" constitutes a denial of the civil rights of an unmarried father on the basis of marital status within the meaning of the Elliott-Larsen Civil Rights Act (MCL 37.2302[a]; MSA 3.548[302][2]).

## DISSENT BY BRONSON, J.

4. APPEAL — MOOTNESS.

*An appellate court should decline to decide cases which have been rendered moot unless: (1) the issues raised are of sweeping public significance, (2) the issues are not only likely to recur but, indeed, certain to recur from one fiscal year to the next, and (3) the same issues will inevitably again arise between the*

*same parties who were involved in the appeal which was rendered moot.*

*Terrence P. Bronson,* for plaintiffs.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Gregory G. Drutchas* and *Anthony A. Muraski),* for defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman,* Assistant Attorney General, for the Michigan Department of Civil Rights.

Before: MACKENZIE, P.J., and BRONSON and HOOD, JJ.

HOOD, J. Plaintiffs appeal from a denial by the trial court of an injunction which would have ordered defendant hospital to allow the presence of plaintiff Coch in the delivery room during the birth of his and plaintiff Karen Whitman's child. Since the relief sought has been rendered moot by the subsequent birth of the child, a review of the facts and the proceedings is instructive as to why the Court chooses to deal with the issue presented.

Plaintiffs filed in May, 1982, a petition seeking injunctive relief, asking that defendant hospital be prohibited from excluding plaintiff Coch from its delivery room during the birth of a child expected on or about May 22, 1982, by plaintiff Whitman. Coch was the acknowledged father of the expected child. Although the plaintiffs were not married, Coch resided with Whitman and her son from a prior marriage and supported them, and the plaintiffs considered themselves "a family unit".

Plaintiffs had attended a natural childbirth course together and had received the attending physician's permission for Coch's presence during

Whitman's labor and delivery at defendant hospital, which was the only hospital in Monroe County equipped for the delivery of babies. The hospital refused to permit Coch's presence in the delivery room because he was not a husband nor a member of Whitman's "immediate family". The hospital relied upon its written policy that limits a delivering mother to one nonmedical support person who must be a member of the mother's immediate family. Plaintiffs claim that the hospital's action and policy violate the Elliott-Larsen Civil Rights Act, 1976 PA 543; MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

The trial judge, after a hearing, denied plaintiffs' request for injunctive relief and dismissed their action. A panel of this Court then granted plaintiffs leave to appeal, and entered an order prohibiting defendant hospital from enforcing, as to plaintiffs, its policy of excluding any but the patient's "immediate family".

Plaintiffs' child, a baby girl, was born by Caesarean section at the University of Michigan Women's Hospital in Ann Arbor, Michigan, on June 30, 1982. Plaintiff Coch was present in the delivery room. Thus, while this dispute is, as has been indicated, technically moot, the issue involved is of public significance and likely to recur in the future. We therefore conclude that it should be decided by this Court. *Colombini v Dep't of Social Services,* 93 Mich App 157, 161; 286 NW2d 77 (1979).

The defendant's policy states that an "authorized participant" may be present in the delivery room only under the following conditions:

"A. The mother to give birth requests to have the authorized participant present during the delivery;

"B. The attending physician consents to the authorized participant's presence during delivery after satisfying himself/herself that preparation of the authorized participant is adequate;

"C. Admission of the authorized participant to the delivery room will only be considered when the mother is going to be awake; that is, the mother will be receiving, for the delivery, a local, spinal, epidural or caudal anesthetic and will not be in an unconscious or uncommunicative state due to medications or otherse;

"D. The authorized participant will leave the delivery room at the request of attending physician, anesthetist or nurse when in the judgment of the attending physician, anesthetist or nurse the presence of the authorized participant is or would be contrary to the best interest, welfare, safety or privacy of the mother, baby or other patient(s);

"E. The authorized participant may not enter the Delivery Room before the attending physician;

"F. While in the Delivery Room, the authorized participant will wear clothing which conforms to that worn by professional people in the room and will remain seated at the head of the delivery table;

"G. The authorized participant requests to be present in the Delivery Room by means of formal REQUEST TO BE PRESENT FOR BIRTH-ACKNOWLEDGEMENT AND ASSUMPTION OF RESPONSIBILITY.

"H. The authorized participant will submit written evidence that he/she has completed an approved prenatal childbirth preparation course with the mother."

The defendant's policy also defines an authorized participant as *"a husband or a member of the immediate family* of the mother giving birth". In the "Request To Be Present" form which each "authorized participant" must submit, he or she must agree to:

"Assume all responsibility and risk for any adverse mental, emotional and/or physical effects which may result that in any manner arise from my presence and

observations in the Delivery Room for the contemplated birth."

The request must be signed by the "participant" and the mother's attending physician.

Plaintiffs met each and every one of the defendant's requirements, except that Coch was not Whitman's husband or a member of her "immediate family". Therefore, the question we must answer is whether the hospital's policy as applied to Coch was impermissibly discriminatory. We conclude that it was.

The Elliott-Larsen Civil Rights Act provides that:

"Except where permitted by law, a person shall not:
"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of * * * marital status." MCL 37.2302(a); MSA 3.548(302)(2).

A "place of public accommodation" includes a health institution "whose * * * services are offered * * * or * * * made available to the public". MCL 37.2301; MSA 3.548(301). Had plaintiffs Whitman and Coch been married to one another, it is clear that under defendant's policy Coch would have been permitted into the delivery room as Whitman's nonmedical support person. Therefore, defendant's policy clearly violated the above statutory provision against discrimination on the basis of marital status.

We also reject the defendant's argument that its policy is protected by the Public Health Code, § 21513, MCL 333.21513(a); MSA 14.15(21513)(a), which makes the hospital's governing body "responsible for all phases of the operation of the

hospital * * * and quality of care rendered in the hospital". MCL 333.21511; MSA 14.15(21511) provides that each hospital must be licensed under the code, and MCL 333.20152; MSA 14.15(20152) provides that each licensee should certify to the Department of Health as a part of its application that "[a]ll phases of its operation * * * comply with state * * * laws prohibiting discrimination". It is therefore clear that hospitals are not exempted from the mandates of the Elliott-Larsen Civil Rights Act.

Defendant also argues that the decision regarding whom to permit into the hospital's delivery rooms is a discretionary medical one and the limitations it has established, although they exclude the unmarried fathers of delivered children, are rationally related to medical goals.

There is indeed authority for the proposition that a hospital's policy regarding nonmedical support persons in delivery rooms is purely discretionary and involves no constitutional rights. See *Fitzgerald v Porter Memorial Hospital,* 523 F2d 716 (CA 7, 1975), *cert den* 425 US 916; 96 S Ct 1518; 47 L Ed 2d 768 (1976); *Hulit v St Vincent's Hospital,* 164 Mont 168; 520 P2d 99 (1974). Defendant, however, unlike the hospitals involved in *Fitzgerald* and *Hulit,* has not excluded all nonmedical support persons. It has determined that each maternity patient may have one nonmedical person to support her during labor and delivery. Having established such a policy, defendant must administer the program in a nondiscriminatory manner.

We also reject defendant's assertion that its policy does not in fact discriminate on the basis of marital status because married persons and unmarried persons alike may only be accompanied by a relative. This argument completely ignores

the fact that a married woman has one relative that no unmarried woman has: a husband.

Finally, defendant's recitation of the plethora of possible untoward results of disallowing its policy is speculative at best. We note that the other requirements in the defendant's policy are well designed to screen out those persons who are not bona fide in their relationship to and intent to aid and support the mother and her baby.

Reversed.

MacKENZIE, P.J., concurred.

BRONSON, J. *(dissenting)*. I respectfully dissent. I do not believe that this Court should address the issue raised in this appeal, as the matter has been rendered moot by the birth of plaintiffs' child. The majority concedes the mootness of this appeal, yet cites *Colombini v Dep't of Social Services, supra,* in an effort to justify review of the issue. *Colombini, supra,* is distinguishable. There, the constitutional validity of an entire statewide social services program was subject to question. Under the circumstances, this Court had little choice but to find that the issue was one "of public significance" which was not only "likely" but certain to "recur" from one fiscal year to the next. 93 Mich App 161. Compare also the authorities cited in *Colombini, supra,* for reviewing moot appeals; *University of Michigan Regents v Michigan,* 47 Mich App 23; 208 NW2d 871 (1973), *aff'd* 395 Mich 52; 235 NW2d 1 (1975); *General Telephone Co v Public Service Comm,* 78 Mich App 528; 260 NW2d 874 (1977); *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968). *University of Michigan Regents, supra,* involved an ongoing dispute concerning the Legislature's power to control a university's expenditure of

funds, Const 1963, art 8, § 5, an issue of "public significance" which was practically certain to recur from one fiscal year to the next. Similarly, *General Telephone, supra,* involved a dispute concerning the methods used by the Public Service Commission in setting rates; the Court found that the establishment of a 1977 rate schedule did not render moot a dispute concerning the commission's methods of fixing 1975 rates, where the alleged errors of method would inevitably carry over from one year to another.

Each of the foregoing cases involved controversies which contrast sharply with that of the present case in three respects: (1) the issues were of sweeping public significance directly affecting thousands if not millions of state residents; (2) the issues were not only "likely to recur", but indeed, certain to recur from one fiscal year to the next; and (3) the dispute would inevitably arise between the same parties who were involved in the appeal in question. Contrast the present case where the issue in question affects a very limited number of Michigan citizens, the issue will not inevitably recur with each passing fiscal year, and, most importantly, the issue will probably never recur between the parties involved in this appeal. In short, I do not believe that the majority has cited any authority which would justify its judicial activism.[1]

---

[1] The remaining authority cited by the court in *Colombini, supra,* for review of moot issues was *Milford, supra,* a case involving a dispute concerning the standards used by hospitals to terminate doctors' staff privileges. The Supreme Court justified review by observing that "[t]he nature of this case is such that we are unlikely to receive the question in the near future", 380 Mich 55-56. The present case is distinguishable. Although the issue raised by this appeal will probably never recur between the present parties, this Court will have ample opportunity to address it in the foreseeable future. This follows from the fact that plaintiffs' family arrangement, while not prevalent, is hardly unique. Others may bring claims similar to that

Even if this case were not moot, I would have reservations about the result reached by the majority. The Elliott-Larsen Civil Rights Act has recently been the subject of numerous appeals, and in many of these cases one of the parties has sought to substantially broaden the act's application. This Court has frequently accommodated requests to read the act broadly, to an extent which I believe has come to exceed that contemplated by the Legislature. Although mootness has caused me to refrain from commenting on the substantive result reached by the majority in this particular case, I find cause for concern in this Court's increasing tendency to routinely resort to the Elliott-Larsen Civil Rights Act as an omnibus or all-purpose remedy.

I would dismiss the appeal and affirm on the basis of mootness.

of plaintiffs; this Court can and should await the development of such a genuine case and controversy, to review the merits of such a claim.