SNYDER v SNYDER

Docket No. 104434. Submitted June 21, 1988, at Lansing. Decided August 17, 1988.

Plaintiff, Warner Snyder, and defendant, Rosalee Snyder, were divorced by order of the Lenawee Circuit Court. Physical custody of the parties' four minor children was awarded to defendant, with plaintiff being given visitation rights. Plaintiff subsequently began living with another woman, to whom he was not married. Defendant voiced concern about the suitability of plaintiff's living arrangements for the children. Defendant eventually filed a petition to limit plaintiff's visitation rights. Prior to the scheduled hearing on the petition, defendant wrote a letter to the court asking that overnight visitation be suspended until after the hearing. Upon receiving the letter, the court, Kenneth B. Glaser, J., summoned counsel for both parties to court and read the letter into the record. The judge expressed shock at plaintiff's living arrangements and ordered that plaintiff was not to have the children in the presence of the woman with whom he was living. Following the scheduled hearing on the petition, the court concluded inter alia that plaintiff would not provide a stable environment for the children even if he married the woman with whom he was living and that plaintiff was morally bankrupt. The court cancelled plaintiff's visitation rights completely until further order of the court and enjoined plaintiff from having the children in the presence of any woman with whom he was living, but to whom he was not married. Plaintiff appealed. Plaintiff subsequently married the woman with whom he was living and defendant stipulated that the injunction could be lifted and defendant's visitation rights reinstated. Plaintiff then sought to have the appeal declared moot.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Divorce and Separation §§ 999 *et seq.,* 1011 *et seq.*

Propriety of provision of custody or visitation order designed to insulate child from parent's extramarital sexual relationships. 40 ALR4th 812.

Complete denial of visitation rights of divorced parent. 88 ALR2d 148.

1. The issue on appeal is not moot. The trial court did not provide that plaintiff's visitation rights would automatically be restored upon his marriage.

2. The trial court abused its discretion in cancelling visitation entirely and in enjoining plaintiff from having his children in the very presence of his companion, now his wife. The court clearly erred in concluding that the sole fact that plaintiff lived with a woman to whom he was not married was sufficient to determine that he was a morally unfit parent and thus should have his visitation rights cancelled. A parent's lifestyle cannot be the sole factor by which his or her morality is judged.

Reversed.

PARENT AND CHILD — VISITATION — LIFESTYLE — MORALITY.

A noncustodial parent's right to visit his children cannot be cancelled solely because he is living with a woman to whom he is not married; a parent's lifestyle cannot be the sole factor by which his or her morality is judged, and morality is only one of the factors which must be considered in determining visitation rights (MCL 722.23; MSA 25.312[3]).

*Baker, Durst, Marr, Nelson, Benz & Baldwin* (by *Dane C. Nelson*), for plaintiff.

*Timothy P. Pickard,* for defendant.

*Lawrence C. Force,* for Troy Snyder, a minor child.

Before: WAHLS, P.J., and HOOD and N. J. KAUFMAN,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order by the Lenawee Circuit Court cancelling his visitation rights until further order of the court and enjoining him from having his children in the presence of any woman with whom he was having a relationship, but to whom he was not married.

When the parties were divorced on October 25,

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

1984, the judgment of divorce awarded physical custody of the four minor children of the marriage, Holly, Troy, Jill, and Megan, to defendant. Plaintiff was awarded visitation rights, including the right to visit with the children on the first and third weekend of each month and on alternating holidays.

In the summer of 1985, plaintiff moved into the home of a woman to whom he was not married, and defendant raised concerns about the suitability of plaintiff's living arrangements for the children. A Friend of the Court home inspection was made, and the investigator found plaintiff's living arrangements to be suitable for the children for visitation purposes. After approximately a year, plaintiff complained that defendant was denying his visitation rights, and defendant again countered with complaints about her ex-husband's living arrangements.

Eventually, defendant filed a petition to limit visitation and, after a hearing, a Friend of the Court referee recommended that the petition be denied. Defendant filed objections to the recommendation, and the trial court scheduled a hearing for January 19, 1987.

In the interim, defendant wrote a letter to the trial court asking that overnight visitation be suspended until after the hearing. Upon receiving the letter on December 18, 1986, the trial court summoned counsel for both parties to court and read the letter into the record. The trial judge indicated that he was shocked upon reading the letter and that he strongly believed that children should not be exposed to a "meretricious relationship." When counsel for plaintiff noted that there was no evidence of any harm to the children, the trial court stated that no proof of harm was needed and that harm could automatically be

assumed by exposure of the children to the relationship. The trial court ordered that plaintiff was not to have the children in the presence of the woman with whom he was living.

The January, 1987, hearing was adjourned several times due to continuing trials and was eventually held beginning on June 4, 1987, and concluding on September 25, 1987. At the hearing, plaintiff testified that he believed that it was morally wrong for two unmarried persons to live together, but that he did so out of financial necessity. Plaintiff indicated that if he could manage financially he would get married. Defendant testified that she felt that the situation was morally improper, that it caused stress for the children, and that it caused them to have less respect for her moral teachings.

At the conclusion of the hearing, the trial court, in lengthy remarks, concluded, inter alia, that plaintiff would not provide a stable environment for the children even if he got married and that plaintiff was morally bankrupt. The trial court subsequently entered an order cancelling plaintiff's visitation rights completely until further order of the court and enjoining plaintiff from having the children in the presence of any woman with whom he was living, but to whom he was not married. This appeal followed.

We first note that defendant asserts that she offered to stipulate that the injunction could be lifted after plaintiff married his companion on September 28, 1987. Plaintiff states that this appeal is therefore moot.[1] *Swinehart v Secretary of State,* 27 Mich App 318, 320; 183 NW2d 397 (1970), lv den 384 Mich 801 (1971). We conclude that the

---

[1] Subsequent to oral argument, defendant's counsel submitted to this panel a copy of a stipulation and order, dated March 11, 1988, reinstating visitation rights on the part of plaintiff. We are constrained to decide this case on the basis of the record presented on appeal.

issue on appeal is not moot. In neither the opinion rendered from the bench nor in its subsequent written order did the trial court provide that plaintiff's visitation rights would automatically be restored upon his marriage. In fact, the court specifically stated that restoration of his visitation rights would require more from plaintiff than his merely getting married. See also *Whitman v Mercy-Memorial Hospital*, 128 Mich App 155, 158; 339 NW2d 730 (1983).

Visitation disputes are governed by the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* The controlling factor in visitation disputes is the best interests of the child. *Farrell v Farrell*, 133 Mich 502, 512-513; 351 NW2d 219 (1984). MCL 722.23; MSA 25.312(3) states:

> "Best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

(k) Any other factor considered by the court to be relevant to a particular child custody dispute.

When deciding a visitation matter, the court must consider each of these factors and state a finding on each in order to determine the best interests of the child. Failure to make specific findings is error. *Williamson v Williamson*, 122 Mich App 667, 672; 333 NW2d 6 (1982). This Court reviews a visitation order de novo, but will affirm that order unless the trial court abused its discretion or committed a clear legal error on a major issue. MCL 722.28; MSA 25.312(8); *Van Koevering v Van Koevering*, 144 Mich App 404, 407; 375 NW2d 759 (1985), lv den 422 Mich 971 (1985).

Our review of the record and the trial court's remarks throughout these proceedings convinces us that the trial court abused its discretion in cancelling visitation entirely and in enjoining plaintiff from having his children in the very presence of his companion, now his wife. The trial court clearly and erroneously concluded that the sole fact that plaintiff lived with a woman to whom he was not married was sufficient to determine that he was a morally unfit parent and thus should have his visitation rights cancelled. A parent's lifestyle cannot be the sole factor by which his or her morality is judged. *Van Koevering, supra,* pp 408-409; *Williamson, supra,* p 673.

While the trial court did make findings on the factors contained in MCL 722.23; MSA 25.312(3), the record reveals that the trial court focused solely on plaintiff's moral fitness and the fact that he was not married and blamed this situation for the problems which the family had experienced. Morality is only one of the factors which must be considered in determining visitation rights. The trial court's ruling that plaintiff could not exercise visitation in the presence of his companion under any circumstances, even at dinner or a movie, was apparently based on nothing more than the court's disapproval of relationships outside of marriage and totally disregarded plaintiff's visitation rights. Nothing in the record suggests that even the mother objected to plaintiff's companion's being in the presence of the children under circumstances other than overnight visits.

In summary, the trial court's action in totally cancelling plaintiff's visitation rights based solely on the court's disapproval of plaintiff's lifestyle constituted an abuse of the trial court's discretion.

Reversed.