No. 13057

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

NORTH VALLEY HOSPITAL, INC.,

Plaintiff and Respondent,

-vs-

DAVID V. KAUFFMAN, M.D.,

Defendant and Appellant.

---

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert S. Keller, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Walterskirchen and Christiansen, Kalispell,
Montana
Merritt N. Warden argued, Kalispell, Montana

For Respondent:

Murphy, Robinson, Heckathorn and Phillips,
Kalispell, Montana
I. James Heckathorn argued, Kalispell, Montana

For Amicus Curiae:

Smith, Smith and Sewell, Helena, Montana
Chadwick Smith argued, Helena, Montana

---

Submitted:  December 12, 1975

Decided:  JAN 15 1976

Filed:  JAN 5 1976

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from the judgment entered in the district court, Flathead County, Hon. Robert S. Keller, presiding without a jury. That judgment orders, adjudges and decrees that David V. Kauffman, M.D., be enjoined from further utilization of the facilities of the North Valley Hospital, Inc.

The principals involved herein are:

(1) North Valley Hospital, Inc., plaintiff and respondent, hereinafter referred to as Hospital.

(2) David V. Kauffman, M.D., defendant and appellant, hereinafter referred to as Appellant.

(3) The Board of Directors of the Hospital, hereinafter called the Board.

(4) The private physicians practicing in the surrounding area who utilize the Hospital for patient care, hereinafter referred to as the Medical Staff.

The Hospital is a private, nonprofit corporation, constructed in part with Hill-Burton federal funds, that operates in Whitefish, Montana. It is governed by the Board, made up of members of the community. Hospital has no paid staff of doctors or interns. It has a paid administrator, one Burl Hatfield, who handles the day to day operations of the facility under the overall supervision of the Board.

Appellant was licensed to practice medicine in Montana in 1958 and has practiced in the Whitefish area since 1959. He utilized the facilities of the Hospital during that period and held most of the various offices and served on most of the Hospital's committees.

For a number of years Appellant had problems at the Hospital which brought about suspensions and disciplinary measures from the Medical Staff. During the 1960's, for a one year period,

- 2 -

he was required to have at least one other surgeon with him for all surgery done at the Hospital. During much of the time he practiced at the Hospital he had difficulties with the staff in not maintaining proper records in regard to his patients.

Finally, in the late summer 1974, the Medical Staff recommended and the Board approved, that the Hospital privileges of Appellant not be renewed. Several meetings were held at which Appellant was present, at least for part of the meeting, where the decision not to renew was discussed in some detail. Appellant requested a hearing, as provided in the by-laws of the Hospital, and that hearing was held on November 26, 1974.

At the hearing a list of some 23 "charges" or "problem areas" was presented to Appellant. He alleges this was the first time he had seen the agenda of "charges" or "problem areas" on which the Medical Staff had acted. Thereafter, the Medical Staff voted to recommend nonrenewal of privileges and the Board accepted the recommendation. Appellant was notified, but he continued to use the facility and the Hospital brought an action to enjoin him from using the facilities.

On January 28, 1975, hearing was held in the district court, Flathead County, on an order to show cause asking why Appellant should not be permanently restrained from utilizing the facilities of the Hospital. The hearing lasted for several days and both parties presented evidence.

At the hearing Appellant indicated that he had not been given a proper opportunity to defend himself at the November 26 hearing in that the list of "charges" was presented to him for the first time at the hearing. The district judge took the objection under advisement and at the conclusion of the evidence ordered that a new hearing be held by the Hospital and that Appellant be fully advised in writing, prior to the hearing, of the nature of

the "charges" and the basis of the recommendations, in order that Appellant could be prepared to present evidence to the Medical Staff.

This was done and a full hearing was held on February 6, 1975. Appellant was present with counsel. The district judge attended solely as an observer. At the close of this hearing, the entire Medical Staff voted unanimously to recommend Appellant's privileges not be renewed. Thereafter the district court ruled the actions of the Hospital were based on good cause and were not discriminatory. The district court issued a comprehensive memorandum, along with findings of fact, conclusions of law and judgment. Appellant appeals.

While Appellant sets forth ten issues for this Court's consideration, we find two issues controlling:

1. Can the Board of Directors of a nonprofit hospital corporation refuse medical staff privileges to a physician upon the recommendation of the medical staff thereby denying that physician the use of the hospital's factilties for the treatment of his patients?

2. Did the procedures followed leading to Appellant's dismissal from the Medical Staff of the Hospital violate Appellant's right to due process of law or his right to freedom from discrimination in the treatment of his patients?

Appellant argues that certain specific statutes of this state control and the action taken against him is no authorized by statute.

Appellant first argues that Chapter 10, Title 66, Revised Codes of Montana 1947, controls as to the licensing and supervision of physicians of this state. Section 66-1022 provides:

"Statement as to practice permitted. The certificates issued shall state the extent and character of the practice that is permitted, and shall be in the form prescribed by the board. Neither the privileges nor

the obligations granted to or imposed upon
licensees may be altered except by legislative
enactment or by action of the board duly authorized
hereunder."

Appellant then cites a recent opinion of this Court, Hull v.

North Valley Hospital, 159 Mont. 375, 390, 498 P.2d 136, where

this Court held:

"The question of whether or not a hospital can
limit a medical license under the statute is not
particularly relevant. This power has been reserved
by statute to the Board of Medical Examiners and
is remedial only. If a duty to 'act' were found and
a doctor would not voluntarily comply, a formal com-
plaint to the Board of Medical Examiners would satisfy
that duty."

Such argument begs the question in the instant case,

for here, unlike the facts in Hull, the power in question is

relevant. The underlying issue here is whether or not a hospital,

private or public, has a right to enact and enforce reasonable

rules and regulations to govern its internal operations, including

the activities of its doctors who are granted the privilege of

treating patients in its facilities? We answer in the affirmative.

We need go no further in support of such answer than recent cases

of this Court, though there are many supportive cases from most

jurisdictions in this country. 40 Am.Jur.2d, Hospitals and

Asylums, § 6, p. 855.

This Court in three recent decisions held that Montana

hospitals have the power to enact reasonable rules and regulations

to govern their internal operations, including the activities of

physicians practicing there. Ham v. Holy Rosary Hospital, 165

Mont. 369, 529 P.2d 361, 31 St.Rep. 948; Hulit v. St. Vincent's

Hospital, 164 Mont. 168, 170,174, 520 P.2d 99; Hull v. North

Valley Hospital, supra.

In Ham while we were considering a strictly private

hospital, we held a private hospital could prescribe terms on

which it offers its services to the public providing it did not

discriminate against some patients in providing those services.

In Ham, we also noted the statutory language of section 69-5217, R.C.M. 1947, which provides "Physicians shall continue to have direction over their patients.", means that a physician has exclusive control/patients, subject to hospital rules based on religious or moral tenets.

In Hulit a case involving a hospital partially constructed with Hill-Burton funds, where we reviewed the hospital rule forbidding the Lamaze method of childbirth, this Court said:

> "* * * however, we approach this case with the view
> that licensed hospitals have the authority, acting
> on the advice of their medical staffs, to adopt rules
> of self regulation governing the hospital's physicians.
> Licensed physicians must live according to the rules
> adopted by their colleagues, even though the physician
> has direction over his patient."

In support of the above cited statement from Hulit, this Court cited Hull v. North Valley Hospital, supra, the very hospital here involved. However in Hull the Hospital was the defendant in a case where an injured plaintiff sued to establish that the Hospital was negligent in failing to remove Dr. Kauffman from its medical staff. While this Court found for the Hospital in Hull, we did find that a hospital must enact one set of rules to apply to all doctors to prevent discrimination.

Appellant argues that because the Hospital was partially built with "Hill-Burton" funds it is a "public" hospital and the Board cannot prevent a physician from practicing in a "public" hospital, because the state had granted him a license which could only be suspended or terminated by a legally empowered authority. We find this argument irrelevant. We are not here involved in the revocation of a license. The trial court found in its conclusion of law No. 1:

> "That the plaintiff is a private, nonprofit cor
> poration, but specifically disclaimed any reliance
> upon the 'private' nature of the corporation, and
> asked to be treated as if it were public; that in
> light of the receipt and use of Hill-Burton funds, it
> must be treated as if it is public, in so far as
> discriminatory rules and regulations are concerned."

- 6 -

Undoubtedly, the Hospital agreed to a garden variety of rules and regulations related to both its operation and to the use of Hill-Burton funds in connection with its acceptance of benefits under the Act. Here, we are not faced with the type of discrimination that arose in G.C. Simpkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, where negro physicians, dentists and patients brought an action for declaratory and injunctive relief against hospitals receiving Hill-Burton funds which discriminated against Negro citizens.

Such are not the facts in the instant case and we find no basis for concluding that by accepting Hill-Burton funds the Hospital unwittingly surrendered any rights it otherwise possessed to determine the quality of medical practice in its hospital.

Montana is but one of a number of states where the rule making power has been considered favorable to hospital authorities. Moore v. Board of Trustees of Carson-Tahoe Hospital, 88 Nev. 207, 495 P.2d 605; Silver v. Castle Memorial Hospital, (Hawaii-1972), 497 P.2d 564; Rao v. Auburn General Hospital, 10 Wash.App. 361, 517 P.2d 240. The rationale of these cases is that both public and private hospitals have the discretionary right to exclude, suspend or take away staff privileges upon grounds set by the medical staff.

The fact that Appellant is a licensed practicing physician is not, as Appellant argues, a controlling factor. The general rule throughout the country, as noted in the Anno. 37 ALR3d, Physician, Surgeon---Hospital Exclusion, pp. 645, 666, is:

> "It is well settled that a licensed physician or surgeon does not have an unqualified right, constitutional or otherwise, to practice his profession in a public hospital. Therefore, the cases involving charges of improper exclusion or discrimination against such institutions have been decided upon other grounds."

We concur. The licensing by the state is a prerequisite to admission to staff membership in any hospital, private or public.

Granting the privilege of staff membership to a hospital is an entirely separate matter and that power rests in a board acting in accordance with fair rules and regulations. Such board is vested with regulative discretion in its powers of appointment and reappointment of medical personnel to its staff. This power includes the right of refusal of membership to a physician who fails to abide by the rules of the hospital. Dayan v. Wood River Township Hospital, 18 Ill.App.2d 263, 152 N.E.2d 205. Here, the real question is whether or not the operating rules of the Hospital are reasonable and whether or not the procedures provided by the by-laws for notice and hearing were followed.

Appellant's second issue is as to the procedure followed, and whether Appellant's right to due process was violated. While the right to practice a profession is a liberty interest protected by the Fourteenth Amendment, Shaw v. Hospital Authority of Cobb County, 507 F.2d 625, here Appellant was not precluded from exercising that right by the by-laws of the Hospital. He need only have complied with those requirements to have continued his membership on the staff. This consideration is sufficient to dispose of his possible property interest as well. We find the hearings conducted afforded due process.

Appellant does not deny he received proper notice but contends he was denied due process of law because the Medical Staff hearing his case was prejudiced against him. As previously set forth, the trial court after hearing the case for several days, referred the matter back to the Medical Staff for another hearing and to be certain Appellant's rights were protected the court attended the hearing as a spectator to see that the hearing was fully and fairly conducted. Following that hearing every member of the Medical Staff of the Hospital voted to deny Appellant staff privileges.

This Court in <u>Hulit</u>, considering the court's function in this area, referred to a statement in Sosa v. Board of Managers of Val Verde Memorial Hospital (5th Cir. 1971), 437 F.2d 173, 177:

> "'The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as [hospital actions] are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus.'"

Our function is twofold. First to determine whether due process was accorded. From our discussion heretofore, it is clear that it was. Second, to determine whether there was an arbitrary and capricious decision made by the Medical Staff. That a conscientious judgment was made is clear--just the opposite of an arbitrary and capricious one. The competent Medical Staff opinions are sufficient to uphold the findings and decision of the Staff, the Board and the trial court.

Accordingly, the decision of the trial court is affirmed.

<u>John Conway Harrison</u>
Justice

We Concur:

<u>James T. Harrison</u>
Chief Justice

<u>Frank I. Haswell</u>

<u>Wesley Castles</u>

<u>Gene B. Daly</u>
Justices.

- 9 -