673 P.2d 1019 (1983)
Hiram J. LEONARD, M.D., Plaintiff-Appellant,
v.
BOARD OF DIRECTORS, PROWERS COUNTY HOSPITAL DISTRICT, Prowers and Baca Counties, Colorado and Chester G. Cruikshank, William J. Grasmick, Ileta F. Pierson, Miles A. Vana, and Gary W. Oxley, individually and as purported and acting members of said Board of Directors, and Murry A. Carter, individually and as Chief Executive Officer of said Hospital District and a/k/a Administrator of the Prowers Medical Center and Anthony J. Dicola, individually and as attorney for said Hospital District, Defendants-Appellees.
No. 81CA0428.
Colorado Court of Appeals, Div. III.
November 3, 1983.
*1020 Hiram J. Leonard, M.D., pro se.
Holme Roberts & Owen, P.C., Richard L. Schrepferman, John R. Webb, Denver, for defendants-appellees.
BERMAN, Judge.
The defendant Board of Directors of Prowers County Hospital District, a hospital district created under § 32-5-201, et seq., C.R.S.1973, took final action terminating the staff privileges of plaintiff, Hiram J. Leonard, on December 16, 1980. Plaintiff sought review in the district court pursuant to C.R.C.P. 106(a)(4). The district court affirmed the defendant's actions. On plaintiff's appeal of the district court's ruling, we affirm.
*1021 Plaintiff is a physician and surgeon duly licensed by the State of Colorado, practicing in Lamar, Colorado. He has been a member of the medical staff of Prowers County Hospital District, also known as Prowers Medical Center, since 1974.
In January of 1980, four of the five hospital board members voted to renew plaintiff's medical staff membership for the calendar year 1980. About one month later, the board requested plaintiff to remain after a regular meeting to discuss with them a certain medical procedure involving possible malpractice performed by plaintiff on February 12, 1980. Plaintiff refused.
After having received several letters from the hospital board and its attorney requesting more open communications, plaintiff wrote the hospital board a letter characterizing the board's request for information as a "kangaroo court proceeding." In addition, plaintiff sent a written memorandum to the board's attorney advising him to contact plaintiff's attorney if he wished any further information. This memorandum depicted a set of lips on the posterior of a nude figure. The letter and memorandum described were the key events which led the board, following its 1980 renewal of plaintiff's staff membership, to change its position and commence proceedings against plaintiff to terminate his staff privileges.
In March 1980, the hospital board requested the executive committee of the medical staff to take corrective action against plaintiff. The executive committee met, studied the charges, discussed them with plaintiff, and then among themselves voted that the appropriate corrective action was to send a letter of reprimand to plaintiff. The executive committee then issued the written reprimand.
In April of 1980 the hospital board voted to reject the executive committee's corrective action against plaintiff. They voted instead to revoke permanently plaintiff's privileges and remove him from the medical staff.
Pursuant to plaintiff's request, and in accordance with the bylaws, the hospital board appointed a seven member hearing committee to conduct an evidentiary hearing concerning the charges against plaintiff which were the subject of the board's request for corrective action and concerning two new charges of misconduct against plaintiff of which charges the board advised plaintiff by letter in June 1980. The committee held its evidentiary hearings and submitted its written report to the hospital board, finding that the board's decision to revoke plaintiff's clinical privileges at Prowers Medical Center was correct.
In November of 1980, pursuant to Article VIII, Section 6.5 of the hospital bylaws, which provides that the board itself may act as appellate review committee, the board conducted an appellate review and made a decision that its previous decision should be affirmed. In early December, pursuant to Article VIII, Section 6.8 of the bylaws, a joint conference committee composed half of board members and half of medical staff voted to affirm the hospital board's decision.
In mid-December 1980, following receipt of the joint conference committee recommendation, the board made its final decision and findings permanently revoking plaintiff's hospital privileges. The district court's affirmance of this action followed.

I.
Plaintiff argues first that the hospital board was not empowered under hospital bylaw Article III, Section 3.1, to revoke his clinical privileges. That section of the bylaws provides in pertinent part:
"The Governing Body shall act on appointments, reappointments, or revocation of appointments, only after there has been a recommendation from the Medical Staff and Chief Executive Officer as provided in these Bylaws ...." Prowers County Hospital District Bylaws, Art. III, Section 3.1 (emphasis added).
The record shows that in March of 1980, the Medical Executive Committee (MEC) acted on the board's request to take corrective action. The MEC issued a written *1022 reprimand to plaintiff, thus, implicitly "recommending" non-suspension of plaintiff's privileges. The fact that the board voted in April 1980 to reject the committee's recommendation and to proceed instead to terminate plaintiff's hospital privileges does not negate the fact that there was a recommendation from the MEC as required by the bylaws. There is no provision in the bylaws which expressly constrains the hospital board to act in accord with the MEC's recommendation.
Support for the fact that the board was empowered to terminate plaintiff's privileges is found in Article VIII, Section 1.2, Section 4.2 and Section 7.1 of the bylaws. Prowers County Hospital District Bylaws, Art. VIII, Section 1.2, provides:
"When any practitioner receives notice of a decision by the Governing Body that will affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges, and such decision is not based on a prior adverse recommendation by the Executive Committee of the Medical Staff with respect to which he was entitled to a hearing, and appellate review, he shall be entitled to a hearing by a committee appointed by the Governing Body, and if such hearing does not result in a favorable recommendation, to an appellate review by the Governing Body, before the Governing Body makes a final decision on the matter." (emphasis added)
The trial court found, and we agree, that this section precisely outlines the course of proceedings against plaintiff: (1) hospital board action (April 16, 1980); (2) not based on a prior adverse recommendation of the MEC; (3) to which no hearing rights had previously attached; (4) hearing by committee appointed by the board yielding unfavorable recommendation (June 1980); (5) appellate review by the board (November 1980); (6) board's final decision in the matter (December 1980).
Plaintiff's suggested interpretation of the bylaws, that staff privileges can be terminated only upon the MEC's recommendation of termination, would render Section 1.2 of the bylaws superfluous. Such a construction is unacceptable because it contravenes the well-established rule of construction that all provisions of a statute or regulation are intended to be effective. See Flower v. People, 658 P.2d 266 (Colo.1983).
In addition to authority granted by the bylaws, the hospital board is empowered under § 32-5-206(1)(b) and (o), C.R.S.1973, "[t]o have and exercise all rights and powers necessary or incidental to ..." establishing, maintaining and operating the hospital. Thus, by statute, the hospital board is vested with ultimate responsibility for governing the hospital. See also North Valley Hospital, Inc. v. Kauffman, 169 Mont. 70, 544 P.2d 1219, 1224 (1976). Accordingly, under both hospital bylaws and Colorado statutes, the hospital board had both the power and the authority to terminate plaintiff's hospital privileges.

II.
Plaintiff next argues that the district court abused its discretion in concluding that neither the hospital board nor its hearing committee was disqualified by reason of bias and prejudice. Again, we disagree.
Initially, we note that there is a legal presumption of regularity and validity with which the acts of an administrative body are clothed in carrying out its responsibilities. Public Utilities Commission v. District Court, 163 Colo. 462, 431 P.2d 773 (1967). Due consideration must be accorded this presumption that an administrative body has acted fairly, with proper motives, upon valid reasons and not arbitrarily. Colorado Civil Rights Commission v. Colorado, 30 Colo.App. 10, 488 P.2d 83 (1971).
The trial court found that:
"Because only the defendant hospital board has the statutory power to revoke hospital privileges, the policy favoring an unprejudiced tribunal must yield, under the so-called `rule of necessity' to allow action by the only body empowered to act in the matter."
We agree that the rule of necessity controls.
*1023 Although we find no Colorado case which specifically addresses the rule of necessity, § 24-4-101, et seq., C.R.S.1973 (1982 Repl.Vol. 10) indicates that disqualification for bias will not be allowed to thwart administrative decision making. Section 24-4-105(3) provides that to avoid bias or an appearance of bias an entire agency or member thereof may withdraw, "unless ... withdrawal makes it impossible for the agency to render a decision." Section 24-4-105(3), C.R.S.1973 (1982 Repl.Vol. 10) (emphasis added).
Here, the withdrawal of the hospital board members for reason of alleged bias would make it impossible to decide the question of plaintiff's medical staff privileges since the board is the only body empowered under the bylaws to make such decision. As the court stated in Duffield v. Charleston Area Medical Center, Inc., 503 F.2d 512, 519 (4th Cir.1974), in commenting upon the rule of necessity:
"[T]he claim of the appellant, if sustained, would have disqualified all members of the Governing Board from acting and would have made it impossible for the Hospital to have validly terminated the appellant's staff privileges, whatever the factual justification for that termination. Such a frustration of the power to act, it is held under this rule, is intolerable. `... [D]isqualification will not be permitted to destroy the only tribunal with power in the premises.' Board of Medical Examiners v. Steward, 203 Md. 574, 102 A.2d 248, 252 (1954)."
In applying the rule of necessity and in holding that it prevails over the policy of disqualification for interest, we are adopting what has been recognized as the majority view. Schwab v. Ariyoshi, 57 Haw. 348, 555 P.2d 1329 (1976). See also New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, 118 N.J.Super. 203, 287 A.2d 14 (Ch.Ct.1972).

A.
Although we embrace the rule of necessity, we note that there may be an exception to its application in the very limited number of cases where there are especially egregious violations of fundamental constitutional rights. Here, however, we find no such grave constitutional violations. The evidence in the record is simply insufficient to support plaintiff's notion that members of the hospital board or of its independent hearing committee were biased or unfairly prejudiced against plaintiff, so as to require disqualification. Plaintiff's lengthy list of the alleged biases of various members of the board and of the board as a whole amounts to little more than a grasping at straws.
For example, plaintiff argues that the hospital board's use of a 1977 complaint against him proves the board's bias against him because since 1977 the board had annually renewed plaintiff's staff privileges. But as the court stated in Miller v. Indiana Hospital, 277 Pa.Super. 370, 419 A.2d 1191, 1194 (1980), plaintiff's "stale charge" argument is without merit:
"Merely reappointing appellant annually to the staff did not indicate an intention on the part of the hospital to ignore the cumulative effect of appellant's prior misconduct. Appellant has neither alleged nor proven any reliance upon the assumption that the actions of the hospital constituted a waiver. It was therefore proper for the hospital committees to consider prior misconduct which may not have been so egregious in any one year as to warrant denial of reappointment, but the cumulative effect of which called for appellant's dismissal from the staff."
See also Colorado State Board of Medical Examiners v. Jorgensen, 198 Colo. 275, 599 P.2d 869 (1979).

B.
There is no evidence in the record to support plaintiff's specific allegations of impermissible bias on the part of either hospital board members Pierson and Cruikshank, or hearing committee members Wright and Young. We presume these officials performed their duties without bias or prejudice, see Public Utilities Commission v. District *1024 Court, supra, and the record supports this conclusion.

C.
Nor do we find any impermissible bias on the part of board member Oxley or any undue prejudice to plaintiff merely because Oxley testified before the hearing committee which conducted the evidentiary hearing concerning the charges against plaintiff. We have four reasons for reaching this conclusion.
First, Oxley did not act in the dual role of witness and adjudicator within any single hearing. The record shows that, pursuant to the bylaws and plaintiff's request, the governing body of the hospital, known as the Hospital Board, of which Oxley was a member, appointed a seven-member hearing committee, of which Oxley was not a member, to conduct an evidentiary hearing concerning the charges against plaintiff. Subsequently, pursuant to the bylaws, the hearing committee's decision that plaintiff's clinical privileges should be revoked was reviewed by the Hospital Board and later by the joint conference committee which was composed half of medical staff and half of board members, including Oxley.
Although Oxley was a member of both of these reviewing bodies, he was not a member of the hearing committee which conducted the initial hearing committee which conducted the initial evidentiary hearing and before which he testified. Hence, it cannot be said that the initial findings of fact regarding plaintiff's insubordination were in any way the product of Oxley's bias.
We find no personal, financial, or official stake in the hospital's decision to terminate plaintiff's privileges which would evidence a conflict of interest on the part of Oxley. Hence, we hold that the evidentiary hearing was conducted impartially. See Scott v. Englewood,Colo.App., 672 P.2d 225 (1983).
Second, we note that, in appearing before the hearing committee, Oxley acted only as a witness developing facts, rather than as an advocate or counsel. See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972). Therefore, the case of Sorin v. Board of Education, 39 Ohio Misc. 108, 315 N.E.2d 848 (Ct.C.P.1974) cited by plaintiff, is inapposite because it deals with the impropriety of one who not only investigates, but who also prosecutes and acts as a witness in the prosecution. Although Oxley acted as a witness and as adjudicator at different stages of the proceedings against plaintiff, he did not act as investigator or prosecutor at any stage in the proceedings against plaintiff. Further, the facts to which Oxley testified were not conclusory facts and were, for the most part, undisputed by plaintiff.
Third, the corpus of constitutional authority leads us to conclude that the dual functions assumed by Oxley in this case did not violate plaintiff's right to due process of law. We base this conclusion on the fact that, although at least eleven U.S. Supreme Court opinions have dealt with problems regarding separation of functions, the Court has never held a system of combined functions to be a violation of due process. 3 K. Davis, Administrative Law Treatise § 18:2 at 343 (2d ed. 1980).
For example, in Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the high Court held that due process is not violated by the supervision of adjudicating officers by officers who are charged with investigating and prosecuting functions. And in Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Court held: "It is not surprising ... to find that `[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process ....' 2 K. Davis, Administrative Law Treatise § 13.02 [at] 175 (1958)."
Fourth, the Colorado Administrative Procedure Act (APA), § 24-4-101, et seq., C.R.S.1973 (1982 Repl.Vol. 10) does not bar Oxley's dual role as a fact witness at one step of the proceedings and members of a reviewing body at another step in the proceedings. The APA provisions on separation of functions apply only to adjudications *1025 required by statute or state constitution to be determined on the record after opportunity for an agency hearing. Section 24-4-105(2), C.R.S.1973 (1982 Repl.Vol. 10).
In plaintiff's case, no statute requires such a formal adjudication, and even if such a formal hearing were required, the APA forbids only a combination of judging with prosecuting. The statute fails to forbid a combination of judging with acting as a fact witness or of judging with advocating unless the advocate is a prosecutor, which Oxley was not.
Since many of the charges against plaintiff concerned insubordination directed at the Hospital Board, it was necessary that a member of the Board testify. The fact that Oxley testified did not prejudice him to vote against plaintiff. Rather, as a Board member, he was simply in the best position to have first-hand knowledge of the relevant facts.
As in Brinkley v. Hassig, 83 F.2d 351 (10th Cir.1936), plaintiff's actions "were so notorious that ignorance of them by members of the board was an impossibility and such knowledge compelled condemnation." Here, too, we find that the facts in the record, and not bias or prejudice, compelled Pierson, Cruikshank, and Oxley to vote adversely to plaintiff.

D.
Nor is bias evidenced by the hospital board acting as its own appellate review body. Article VIII, Section 6.5, of the hospital bylaws, to which plaintiff agreed, specifically allows for such a procedure. Furthermore, plaintiff does not assert that he requested such review to be performed by an independent body. Under such circumstances, plaintiff cannot sustain a claim of prejudice.
Plaintiff's other specific allegations of bias are without merit.

E.
In short, plaintiff has the burden of proof to overturn the trial court's affirmance of the hospital board's decision. See Bristol v. County Court, 143 Colo. 306, 352 P.2d 785 (1960). He has failed in his attempt to meet that burden. Therefore, as courts generally should, we refuse to substitute the judgment of this court for that of the hospital's governing body. North Valley Hospital, Inc. v. Kauffman, supra; Sosa v. Board of Managers, 437 F.2d 173 (5th Cir.1971). See also Carter v. Small Business Administration, 40 Colo.App. 271, 573 P.2d 564 (1977) (the court's review function is exhausted where a rational basis is found for discretionary agency action taken).

III.
Plaintiff's third argument is that he was denied due process because allegedly the hearing committee violated the bylaws in revoking his hospital privileges. We agree with the trial court's finding of fact that the actions of the hospital board and its hearing committee "have conformed to the bylaws," and therefore, we find no denial of due process.

IV.
Plaintiff's final protest on appeal concerns the lack of detailed findings of fact by the independent hearing committee. He asserts that such findings are required by Article VIII of the hospital bylaws, but we find no such provision in the bylaws. Article VIII does require the hearing committee to submit a written "report," but that provision of the bylaws was fulfilled on July 8, 1980, when the committee submitted its report to the board.
Moreover, the absence of findings by an administrative body is not fatal to a decision if there is evidence in the record which supports that body's conclusion. Cooper v. Civil Service Commission, 43 Colo.App. 258, 604 P.2d 1186 (1979). Here, we find ample evidence in the record justifying the board's revocation of plaintiff's medical staff privileges.
Finally, flexibility is required in the application of due process in hospital cases, Ladenheim v. Union County Hospital District, 76 Ill.App.3d 90, 31 Ill.Dec. 568, 394 *1026 N.E.2d 770 (1979); see also Chiappe v. State Personnel Board, 622 P.2d 527 (Colo.1981). Due process in hospital cases is a concept which dictates that physician problems be resolved with minimal procedural complications because of the hospital's interest in patient safety. See Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361 (9th Cir.1976) (fn. 20). We perceive no due process violation here.
All other issues raised on appeal by plaintiff are without merit.
Judgment affirmed.
KELLY and TURSI, JJ., concur.